# United States District Court
# For The District of Columbia

-----------------------------------------------------

Debabrata Saha,

    **Plaintiff,**

v.

                             Civil Action No. 1:08-cv-00087-RCL

**The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg**

    **Defendants.**

-----------------------------------------------------

## Plaintiff's Request for Reconsideration of
## Judge Lamberth's March 12, 2008 Memorandum and Order

Plaintiff respectfully request for reconsideration of March 12 Memorandum before addressing the pending motions in Docket 16 & 17. The rationales are following.

**1) Judge overlooked**; the documents he sought for were already attached in Docket 16 & 17.

**2) Judge misunderstood plaintiff's status of employment**; Plaintiff's tenure **was not revoked** and his **service was not terminated**. Dispute Committee resolution **was merely a recommendation**. For tenure revocation, as per Faculty Code, that recommendation needed endorsement of President Trachtenberg and then the approval of the Board of Trustee. When Plaintiff pointed out fraud and rigging in the tenure revocation process, VP for Acad. Affairs, Donald R. Lehman (who signed the Complaint) recused himself. **President Trachtenberg then simply did not send the recommendation to the Board of Trustee.**

**3) GWU's Agreement** : it should be noted that GWU, after negotiations with the Plaintiff, made commitment through its Nov. 18, 2005 letter to keep Plaintiff on payroll till the matters are resolved. Presently, the Grievance procedure is under way. Therefore, granting Preliminary Injunction will not send any wrong message. Rather, **it will send a clear message to GWU** to follow its own procedures and faculty code and **maintain its own contractual commitment (Nov. 18 letter) that was reached through negotiation.**

RECEIVED

MAR 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Without the Injunction, Plaintiff will suffer grave harm and will be unable to function financially (Re. Affidavit#3, Docket 16) while GWU will suffer no harm at all. Besides, Plaintiff has always made himself available for providing teaching services.

**4) Merit of the case :** amongst vigorous challenges from GWU administration, GWU Faculty Senate, based on the merit, instituted a Formal Grievance Procedure against GWU on January 3rd, this year (Re. Plaintiff Exhibits K & N)

In its ruling, the Court held that Plaintiff failed to place before the Court supporting evidence. It is possible that Plaintiff, who is proceeding as *Pro Se*, may not have illustrated supporting evidence the way a practicing lawyer would in support of the Injunction. Assuming that Affidavits, Declaration etc. were not available to Judge, **they are attached once again to make the present document self-contained.**

## Plaintiff's Response to Judge's Comments

### A. Likelihood of Success

**1. Judge wrote : Plaintiff has not provided the Court with the University's Faculty Code or any other documentary evidence showing that his tenure revocation and termination were in violation of University procedures.**

Plaintiff's Answer : Faculty Code is Plaintiff Exhibit B; it was attached to the complaint (Docket 1) submitted on Jan. 16, 2008. Plaintiff provided **Affidavit#1** (Docket 16) to establish that Plaintiff's tenure was never revoked; in fact, Plaintiff Exhibit H (Docket 1) points out Plaintiff's faculty status in Fall 2007, and teaching assignments in Fall 2007 and Spring 2008. This reconfirms that neither Tenure was revoked nor Service was terminated; GWU never issued any letter in this regard.

What happened is that GWU's complaint was heard by Schaffner Panel which acquitted Plaintiff of one charge while upheld a second charge. The Panel agreed with GW VP Lehman for revocation of Plaintiff's tenure. Later, this recommendation was rubber stamped by Dispute Resolution Committee. **But this was just a recommendation.** For revocation under Faculty code, this recommendation had to be acted upon by President Trachtenberg. Plaintiff then brought charges of fraud and rigging to the attention of GWU President, and as a result, **Executive VP Lehman, who wrote the complaint of tenure revocation, recused himself.** Thereafter, President Trachtenberg simply did not send the recommendation to the Board of Trustee for any approval. **Thus Plaintiff's tenure was not**

**revoked and service was not terminated because GWU's decision maker, its President, did not do so.** Please refer to Affidavit 1 for details.

After staying silent for almost a year without producing any letter of termination, GW on Feb. 20, 2008, **for the first time,** shed light on the termination of service by submitting to this Court a letter of some **John F. Williams, Jr.** (Plaintiff Exhibit L, Docket 16); this letter bears no name, no signature, and no affiliation of office. All common sense tells that this letter is a fraudulent attempt on the part of GWU to deceive Prof. Saha as well as to deceive this Court. It is a breach of contract. Plaintiff submitted **Affidavit #2** (Docket 16) to establish GWU's failure to follow Faculty Code and its engagement in fraudulent acts.

**2. Judge wrote : Likewise, plaintiff has failed to produce sufficient evidence showing fraud in the University's tenure revocation process.**

Plaintiff's Answer. : There are three fundamental elements of fraud :

1) **Conspiracy for suspension and Entrapment to Perp Walk the Plaintiff in Fall 2005** : In the summer of 2005 when Prof. Saha was not on GWU payroll, Lehman administration resorted to an unfair mechanism to suspend Prof. Saha and then misled him to go to class to perp walk him on the campus twice.

(2) **Fraud in initiating the tenure revocation process :** VP Lehman's complaint (Plaintiff Exhibit Q) on Saha's tenure revocation derived its impetus from the resolution of May 2nd, 2005 meeting of ECE personnel committee. During Senate hearing when Schaffner panel deliberated to strike out the May 2nd meeting and the vote in that meeting from the record, Lehman testified that his complaint did not rely on May 2nd meeting. Later President Trachtenberg came forward and testified to contradict Lehman. In simple words, Trachtenberg's testimony proved that VP Lehman flip-flopped and lied to Schaffner panel to maintain the legitimacy of his complaint. Plaintiff's tenure revocation was thus initiated through a fraudulent process.

(3) **Fraud in terminating Plaintiff's service** : GWU administration resorted to anything but faculty code to plot a fake termination of his service and stop pay cheques.

Attached **Affidavit #4 addresses the first issue of fraud, while Affidavit #2 and Plaintiff's Declaration address the second and third issues of fraud.**

3

**3. Judge wrote : For instance, plaintiff claims that November 2005 letter from the University stating that he was on paid suspension until further notice demonstrates his entitlement to pay. Plaintiff provides no evidence, however, to show that the University's subsequent revocation of his tenure and termination of his employment are ineffective.**

Plaintiff's Answer. : In making this statement, Judge Lamberth made the assumption that tenure was revoked and service was terminated. But the reality is different. As mentioned before, Plaintiff Exhibit H (Docket 1) points out Plaintiff's faculty status in Fall 2007, and teaching assignments in Fall 2007 and Spring 2008. This reconfirms that neither Tenure revocation nor Termination of Service occurred; GWU never issued any letter in this regard.

Revocation of Tenure and Termination of Service were never made effective. So, the Plaintiff has no burden to **produce evidence to prove ineffectiveness of something that was not made effective in the first place.**

**4. Judge wrote : Given the lack of affidavits, testimony, or other credible evidence to support plaintiff's motion for preliminary injunction, this court finds that plaintiff has no chance of success on the merits.**

Plaintiff's Answer : Affidavits, Declaration, testimony and other credible evidence are already cited above. Based on the merit of the case, amongst vigorous challenge from GWU administration, GWU Faculty Senate instituted a Formal Grievance Procedure against GWU on January 3rd, this year; relevant documents are in Plaintiff Exhibits K & N.

**5. Judge wrote : The central argument in plaintiff's motion for preliminary injunction is that the University's process for revoking tenure was both fraudulent and incomplete. Plaintiff has failed, however, to produce evidence to support his claims.**

Plaintiff's Answer : Please see answers to Item 1, 2, and 3 above.

**B. Irreparable Injury**

**6. Judge wrote : The Supreme Court has determined that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury," Sampson v. Murray, 415 U.S. 61, 90 (1974). Further, the law of this Circuit clearly weighs against a claim of irreparable harm when, as here, loss of income is the only alleged injury.**

Plaintiff's Answer : Supreme Court's decision is reasonable within the perimeter of the sense carried by the word **USUALLY.**

Here, the situation is **UNUSUAL**. After ten years of retaliation and discrimination  and one year of no pay cheque, the plaintiff's family is on the verge of financial collapse (Ref. to **Affidavit #3 on GWU's Financial Strangulation):**

4

- now surviving on borrowed money from friends
- all his assets including his home equity line of credit and revolving line of credit through ELEVEN credit cards have been exhausted
- the family has no health insurance (GWU stopped all the benefits) without any eye exam, physical checkup or other recommended tests and regular checkups.

If the plaintiff cannot save his home and be continued to be illegally deprived by GWU the livelihood of his family, it is no longer a question of **"temporary loss of income, ultimately to be recovered"**, it is the question of **SURVIVAL.** Without the survival, **the plaintiff cannot expect to recover the lost income later.** Plaintiff argues that this state of affairs constitute an **Irreparable Injury caused solely by the Defendant GWU's failure to follow faculty code which stemmed from** Defendants acts of malice and reckless disregard to plaintiff's rights since his Whistle Blowing in 1996.

## C. Balancing Against Remaining Factors

**7. Judge wrote : As for harm to the University, an injunction requiring the University to reinstate Plaintiff's salary retroactive to March 1st, 2007, sends a message to the University community that a professor whose tenure was revoked for persistent neglect of his responsibilities can receive retroactive and continued payment simply by filing suit.**

Plaintiff's Answer : The bottom line is **Tenure was not revoked, Service was not terminated**. Plaintiff always made himself available (in writing) for taking the teaching and other responsibilities, and waited for ten months in trying to resolve the issues before filing this law suit. Here, Defendant GWU is at fault for not following the faculty code and denying the Plaintiff his faculty rights of being reinstated when tenure revocation attempt stopped short of completion. Therefore, there is no question of sending the wrong message to the University community. Rather, granting Preliminary Injunction would send a correct message of law and order that would encourage GWU administrators to follow the faculty code and the rules of the land. It may also help reminding GWU administration that their moral acts should be compatible to Academia which is the Noblest institution of our society.

Respectfully submitted,

*Debabrata Saha*

Debabrata Saha
9409 Fairpine Lane
Great Falls, VA-22066
Ph : (703) 757-5418
March 18, 2008

5

# United States District Court
# For The District of Columbia

------------------------------------------------------

**Debabrata Saha,**

      **Plaintiff,**

**v.**

**The George Washington University,**
**Mona E. Zaghloul, Wasyl Wasylkiwskyj,**
**Edward Della Torre, Joan Schaffner, and**
**Stephen Joel Trachtenberg**

      **Defendants.**

------------------------------------------------------

**Civil Action No. 1:08-cv-00087-RCL**


## Certificate of Service

    I hereby certify that a copy of this whole packet, dated March 18, 2008 is sent to the Counsel of six Defendants by first class mail to the following address.

                    Patton Boggs LLP
                    2550 M Street, N.W.
                    Washington, D.C. 20037-1350

Sincerely,

*Debabrata Saha*

Debabrata Saha
March 18, 2008

## Multiple Documents

| Part | Descriptions | Number of pages |
|------|-------------|-----------------|
| 1 | Main Document | 6 |
| 2. | Affidavit #1, 2, 3, 4 | 3, 3, 2, 3 |
| 3. | Declaration | 4 |
| 4. | Plaintiff Exhibit F | 1 |
| 5. | Plaintiff Exhibit J | 1 |
| 6. | Plaintiff Exhibit K | 3 |
| 7. | Plaintiff Exhibit L | 5 |
| 8. | Plaintiff Exhibit M | 3 |
| 9. | Plaintiff Exhibit N | 5 |
| 10. | Plaintiff Exhibit Q | 11 |
| | Total = | 50 |

# United States District Court
# For The District of Columbia

---------------------------------------------------

Debabrata Saha,

      **Plaintiff,**

v.

                                    **Civil Action No. 1:08-cv-00087-RCL**

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

      **Defendants**.

---------------------------------------------------

# Affidavit #1 : on my contractual status with GWU

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

## My Contractual Status with GWU

- I am a tenured member of GWU faculty since Fall 1993 (Plaintiff exhibit F : tenure notification).

- Tenured faculty member's appointment do not expire.

- As per Nov. 18, 2005 letter of Vice President Donald Lehman, I am on "Paid Suspension until further notice" (Plaintiff Exhibit J).

## Retaliatory Actions of GWU after my Whistle Blowing

- In 1996 I blew whistle on Corrupt Academic Practices that compromised the Integrity of higher learning and fairness to the students. Since then GWU, among many modes of retaliations against me, suspended me four times and each time reinstated me without any apology. Lately in Fall 2005, VP Lehman and Dean Tong initiated a fraudulent process of revocation of my tenure and rigged the process from the beginning to arrange a flawed deliberation from a Faculty Senate Panel (which was later rubber stamped by Senate Dispute Resolution Committee) in favor of revoking my tenure.

3

- I appealed to GW President Trachtenberg complaining about fraud and rigging in the deliberation process and President Trachtenberg informed me through his December 28, 2006 letter that VP Lehman recused himself after the appeal.

- Tenure designation and termination of service are strictly guided by GWU faculty code (Plaintiff Exhibit B) which forms a part of the contractual agreement of employment with GWU. Relevant sections from page 19-20 are :

  > 3. *Appointments and actions of appointments, promotion,* ***tenure designation,*** *and* ***termination of service*** *shall normally follow faculty recommendations. ....*
  > 4. *Faculty recommendations concurred in by the appropriate administrative officers shall be transmitted by them* ***to the President, who shall transmit them to the Board of Trustees.........***

- ***Tenure designation, and termination of service*** : both are treated alike subjected to the approval of Board of Trustees. Plaintiff Saha's ***Tenure designation*** followed this guideline as evidenced in Plaintiff Exhibit F. However, after VP Lehman recused himself, President Trachtenberg in the Spring of 2007 did not send the faculty recommendation (i.e. the Dispute Committee resolution) to the Board of Trustees, and thus the recommendation was not acted upon by the University Authority. The tenure revocation attempt initiated by VP Lehman **fell short of completion** and *no letter of termination of service was issued.* **Therefore, letter of Appointment and Tenure Notification continue to hold.**

- Therefore, the contractual status of Plaintiff did not change. Plaintiff is on **"Paid Suspension until further notice"** as indicated in the Nov. 18, 2005 letter of Vice President Donald Lehman (Plaintiff Exhibit J).

4

- But GWU stopped my pay cheque effective March 1st, 2007 without any prior communication.

- **Conclusion :** *GWU has been failing to maintain its contractual agreement with the Plaintiff since March 1st, 2007 when it stopped Plaintiff's pay cheque.*

Relevant Exhibits : Plaintiff Exhibits B, F, J

_Debabrata Saha_
_____
DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on February 26, 2008.

My Commission Expires _____
Notary Registration No. _____

_Peter James Glazer_
Notary Public

5

# United States District Court
# For The District of Columbia

-----------------------------------------------------

Debabrata Saha,

      Plaintiff,

v.

                                        Civil Action No. 1:08-cv-00087-RCL

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

      Defendants.

-----------------------------------------------------

# Affidavit #2 : on GWU's failure to follow faculty code which is a part of binding contract of employment

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

## A. Regarding Declaration of John F. Williams, Jr. :

    I do not have any professional or personal relation with Mr. John F. Williams, Jr. who submitted a Declaration (Re. Document 9-5) as an official of GWU administration; I do not even know him by face. After a review of his Declaration, I came to the conclusion that any relation on my part with this gentleman would only tarnish my moral make up. The reasons are what follows.

    (1) As indicated in my Affidavit #1, ***Tenure designation, and termination of service*** , both are treated alike subjected to the approval of Board of Trustees. Mr. Williams is totally ignorant about the importance of the faculty code and do not have any right to write the letter he claimed to have written. His overenthusiasm in giving a hand to his colleague VP Lehman in terminating my service commensurates quite well with his overignorance about the importance of the due process in a contractual agreement. **His signed declaration as University official document represents a violation of the faculty code and a ruthless breach of contract on the part of GWU.**

6

(2) The letter he claimed to have written does not bear (a) the name of the person who wrote the letter, (b) does not bear any signature, and (c) does not designate the office it originated from.

(3) The letterhead of Williams' letter is quite dissimilar to letterhead of each of the four other letters in Plaintiff Exhibit L. The other four letters originated from Plaintiff's office, office of ECE Chair Korman, Office of VP Lehman and Office of President Trachtenberg. Plaintiff requests the court to consider all the irregularities associated with Williams' letter in determining whether there had been any act of serious fraud and extortion on the part of GWU in addition to obvious breach of contract.

(4) Quite contrary to what Mr. Williams claimed in his declaration, this letter was neither delivered at my residence address nor at my office mail box; I regularly checked my mailbox in my office at the Academic Center till March 15, 2008. GWU has not provided **any proof whatsoever** that even this **Illegitimate** letter was delivered to the plaintiff.

(5) Prof. Saha has been locked out of his office since March 15, 2007. Chair Korman's March 13, 2007 letter (delivered at residence on March 15 after an inquiry with his office), Saha's March 16 response and other sequence of events suggest that Chair Korman did not have a copy of this letter in his possession on March 15. Given that Lehman administration has a track record of manipulating the date of creation of record, it is possible this **Illegitimate** letter was **illicitly** created later to fit the need. Plaintiff demands explanation from GWU on the irregularities associated with this letter and the signed declaration of Mr. Williams. Without any verifiable and truthful explanation, irregularities associated with this letter are extreme in nature and are of immense legal concerns.

## B. Beginning Game : Fraud as Means of Initiating Tenure Revocation

- After suspending Prof. Saha in the beginning of Fall 2005, VP Lehman wrote the letter of complaint dated Sept 16, 2005 to revoke Prof. Saha's tenure. A simple straight forward reading of the complaint shows the impetus of the letter was derived from the faculty report of May 2nd, 2005 meeting.

- In March 6, 2006 hearing, GW administration (Lehman, Tong, Zaghloul) failed to establish that Prof. Saha received the notice of May 2nd meeting. On March 14, 2006 the Hearing Panel deliberated to strike the May 2nd, 2005 meeting and the vote of the faculty at that meeting from the record.

- On March 20,2006 VP Lehman testified on the issue of May 2nd, 2005 meeting; he testified that faculty code allowed him (as an academic official) to initiate the revocation of tenure without the faculty input; May 2nd, 2005 meeting was not significant.

- But President Trachtenberg on April 17, 2006 hearing contradicted Lehman's testimony. Trachtenberg said that Vice President Lehman told him there was an initiative on the part of the SEAS Faculty to revoke Professor Saha's tenure (Plaintiff Exhibit M: Transcript, pp.5-7, Hearing April 17, 2006)

      **Conclusion :** Lehman initiated revocation of Saha's tenure through a fraudulent process.

## C. End Game : Fraud as Means of Terminating Service

- As per faculty code, Tenure is awarded only upon approval of Board of Trustees; similarly termination of service can be made effective only after approval of Board of Trustees. President Trachtenberg did not send the Dispute Committee recommendation to the Board of Trustee. So, the tenure revocation attempt fell short of completion and there was no termination of service. Faculty status and teaching assignment during Fall, 2007 and Spring 2008 (Plaintiff Exhibit H ) is a reiteration of the fact that tenure was not revoked.

- Therefore, GW's administrative decision of stopping Plaintiff's pay cheque effective March 1st, 2007 is a violation of faculty code and a breach of employment contract. After staying silent for almost a year without producing any letter of termination, GW on Feb. 20, 2008, for the first time, shade light on the termination of service through the **letter of John F. Williams, Jr.** , which bears no name, no signature, and no affiliation of office. All common sense tells that this letter is a fraudulent attempt on the part of GWU to deceive Prof. Saha. It is a breach of contract.

      Relevant Exhibits : Plaintiff Exhibit L, M

                                                               DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :
Sworn, subscribed, and acknowledged before me by Debabrata Saha on  February 26, 2008.

                                                Notary Public

My Commission Expires _____
Notary Registration No. _____

# United States District Court
# For The District of Columbia

-----------------------------------------------------

Debabrata Saha,

     Plaintiff,

v.

                             **Civil Action No. 1:08-cv-00087-RCL**

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

     Defendants.

-----------------------------------------------------

## Affidavit #3 : On financial strangulation by GWU after Plaintiff Saha's 1996 whistle blowing

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

1. In Spring 1996 I exposed GW's corrupt academic practices that compromised the integrity of Higher Learning and fairness to the students.

2. In Spring 1997 GWU President Stephen Joel Trachtenberg declared me as Whistle Blower and gave me many instructions including (a) not to report to EECS Chairwoman Zaghloul and avoid working with VP Donald Lehman, while working directly with the office of Dean Mazzuchi (b) **Stay home in the summer months** which I interpreted as a suggestion for not pursuing consulting during summer months; **I did not pursue consulting for one decade since my one-to-one meeting with President Trachtenberg in 1997; I kept my words.**

3. **To give me a lesson**, Lehman administration officials decided to prescribe two modes of medicines: (a)Intimidation's, written threats of tenure revocation, harassments, ostracism, discrimination and character assassination (they drew parallelism with a mass killer), and (b) financial strangulation : since 1996 Whistle Blowing, over last eleven years, GWU caused enormous financial harm against me through FOUR suspensions and denying any raise in salary. My salary in 2007 remained the same as I had in the beginning of 1996, except for a difference of few hundred dollar. I received a **77%** increase in salary in

9

**first nine years** of employment (1986-1995) before Whistle Blowing, while received an increase of only **0.59%** in following **eleven** years (1996-2007) after whistle blowing.

4. After 1999 suspension, EECS personnel committee investigated me and found no reason for the suspension; the committee even recommended that I should be paid for those suspended months. But, VP Donald Lehman refused to pay.

5. VP lehman's confession during Schaffner Panel Senate Hearing proved beyond any doubt that Lehman was **disingenuous** in writing the August 29, 2005 suspension letter. As per Nov. 18, 2005 letter of Vice President Donald Lehman, I am on **"Paid Suspension until further notice"** (Plaintiff Exhibit J),   yet **GW stopped my pay cheque since March 1st, 2007.**

In addition, GWU continue to harm me by keeping me away from teaching, research and other professional developments though the fraudulent tenure revocation attempt fell short of completion.

6. This is the only job that earns living for my family. During eleven years since 1996 Whistle Blowing, with no raise, four suspensions and no summer job, I had to exhaust all my asset. During these years, our two children grew up from 5&7 to 16&18, and we had to sell our previous home after receiving threats from GWU during Christmas of 1996. Currently, with no pay cheque over almost one year since March 1st, 2007 my financial situation has reached a break point and in the month of February 2008 I failed to pay many Bills including two home mortgage payments. **I have been harmed irreparably and GWU, in an attempt to cover up its Collective Moral Bankruptcy, succeeded in strangling me financially.**

Relevant Exhibit : Plaintiff Exhibit J.

*Debabrata Saha*

DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  February 26, 2008.

PETER JAMES GLAZER
NOTARY PUBLIC
REG # 334630
MY COMMISSION EXPIRES
09/30/2011
COMMONWEALTH OF VIRGINIA

Notary Public

My Commission Expires _____
Notary Registration No. _____

10

# United States District Court
# For The District of Columbia

---------------------------------------------------

Debabrata Saha,

     **Plaintiff,**

v.

                                   **Civil Action No. 1:08-cv-00087-RCL**

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

     **Defendants.**

---------------------------------------------------

# Affidavit #4 : On unfair plot of suspension by GWU and entrapment of GWU to Perp Walk the Plaintiff

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

- In the Summer of 2005 when Prof. Saha was not on GWU payroll and was absent from the campus, GWU's Executive VP for Academic Affairs wrote Plaintiff Saha two letters, dated June 27 and July 26 respectively (Plaintiff Exhibit Q), requesting the Plaintiff to contact his office for possible meetings between him and the Plaintiff.

- Plaintiff Saha did not receive either of the two letters, neither at his residence nor at his University Office mail box.

- In the first week of Fall 2005, on Monday, August 29 Prof. Saha went to his ECE Department office, maintained office hours, and among other things, took from Dept. Secretary Debby Swanson his teaching schedule for that semester, i.e. the courses he was assigned to teach, enrollment figure of students, time and venue of the classes. He was informed of the two courses he was assigned : ECE-203(10) with 17 students, and ECE-243(10) with 7 students. Prof. Saha checked ECE Bulletin

Board and confirmed the teaching assignments given to him. This had been Prof. Saha's routine in the beginning of each semester for last one decade or so.

- On Tuesday, August 30, Prof. Saha again checked with Secretary Swanson as well as ECE Bulletin Board and confirmed there was no change in the schedule.

- During GWU Senate Hearing, Secretary Swanson testified that she indeed provided Prof. Saha his teaching assignments as described above.

- As per instruction of ECE Department, On September 1st, I went to give the first lecture in the Gelman library; after 10/15 minutes into the lecture, police officers entered my classroom, interrupted my lecture and then perp walked me out of Gelman library. The next morning I went to my office; after 15/20 minutes, police officers came into my office, served Bar Notice prohibiting me from the campus property, took away the key of my office and again perp walked me to the parking area and then escorted me out. All this time I didn't know what was going on;  I was told by the police officers that I had been suspended by VP Lehman and they had the instruction to escort me out. **This Police incident is a repetition of what VP Lehman did in 1997** after I Blew Whistle in 1996.

- The first time I saw a copy of the suspension letter was in my first meeting with Dean Tong and ECE Chair Korman on Sept. 8, 2005. That day I came to know that without any prior communication, written or telephonic, VP Lehman put me on unpaid suspension effective August 29, 2005. It should be noted that I was in my ECE office on both August 29 and August 30, 2005, and I checked my mail on both days. I also checked my mail on Sept. 1st night after I was perp walked out of the Library. Even on Sept. 2nd morning ECE Bulletin Board continued to show the same course assignment as I was instructed by Department Secretary Swanson.

- **June 27 & July 26, 2005 Letters :** During GW Faculty Senate Hearing, Lehman was extensively questioned on the issue of these two letters and Lehman confessed that he knew Prof. Saha did not receive those certified letters, and those two letters were found returned to GWU (Re. Testimony in Plaintiff Exhibit Q). Thus Lehman was disingenuous in writing the August 29, 2005 suspension letter.

2

Discovery of Lehman's e-mail (Plaintiff Exhibit Q) and other testimony during Senate Hearing confirmed that in addition to Lehman, there were other GWU administrators who were involved in this **unfair plot of suspension and entrapment for Perp Walking the Plaintiff.** Plaintiff will provide all the relevant documents and testimony upon request of this court.

- GW breached its employment contract with Prof. Saha by **DEMONSTRATING** its vengeance, its malice, and total disregard for civility of the society by not giving him instruction on Sept.1st, 2005 evening during his false arrest and PERP walk about his bar-status from the Campus; this could avoid humiliation, imprisonment and Perp Walk on Sept. 2nd morning. By not giving Prof. Saha any instruction on Sept. 1st evening, Lehman Administration of GW, beyond any doubt, clearly established its acts of continued vengeance and malice to cover up its **Collective Moral Bankruptcy (1996 Scandal)** in a naked and abominable way that is detrimental to our society and detrimental to the moral bringing up of our students . **Prof. Saha suffered emotional trauma and (perhaps) irreparable damage in his reputation as a professional due to incidents on those two days.**


Relevant Exhibits :  Plaintiff Exhibits Q

*Debabrata Saha*

DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on March 17, 2008.

*Robin Lyn Naseem*

Notary Public

My Commission Expires _____
Notary Registration No. _____

ROBIN LYN NASEEM
NOTARY ID # 308937
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2009

3

# United States District Court
# For The District of Columbia

------------------------------------------------------

Debabrata Saha,

      Plaintiff,

v.

                                        Civil Action No. 1:08-cv-00087-RCL

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

      Defendants.

------------------------------------------------------

## Declaration of Debabrata Saha

1.     My Name is Debabrata Saha, and my address is 9409 Fairpine Lane, Great Falls, VA-22066.

2.     I am competent to execute this declaration, which I do upon personal knowledge.

3.     I am the Plaintiff in the Case : **Civil Action No. 1:08-cv-00087-RCL**

4.     Based on my knowledge I do furnish the following :

# On the Credibility of Defendant Lehman and GW Counsel Mishkin

## Background :

      After embarrassing, humiliating, and violating Civil Rights on Sept 1st and Sept. 2nd of 2005 (as complained by the Plaintiff ), VP Lehman and Dean Tong of GWU initiated the process of revoking Plaintiff's tenure. This initiation led to a GW faculty Senate Hearing chaired by Prof. Joan Schaffner of GW Law School.  Sub-sections A, B, C and D outlined below are derivatives of that hearing .

## A. Flip-flop : Credibility of VP Lehman and GW Counsel Mr. Mishkin

### Feb. 21, 2006 :
In a written statement (GW Hearing Brief ) dated Feb. 21, 2006 VP Lehman wrote :

#23.

On June 15, 2005, Professor Zaghloul, Korman and Wasylkiwskyj and Dean Tong met with me to present the unanimous resolution of the Personnel Committee that had been approved on May 2, 2005. That resolution found Professor Saha to have violated two provisions of the faculty code constituting revoking tenure for "adequate cause." **I was struck by the resoluteness of the Personnel Committee's action.**

## March 6, 2006 :

In the hearing, GW administration (Lehman, Tong and Zaghloul ) testified on the issue of May 2nd, 2005 meeting.

## March 9, 2006 :

On March 9, GW Counsel Douglas Mishkin, on the importance of May 2nd meeting, wrote :

"As is evident from their written statements (as well as from Dean Tong's responses to Mr. Karl's questions), Executive Vice President Lehman and Dean Tong were and are satisfied that the May 2nd meeting of the Personnel Committee provided them with appropriate input from the Department in making their decision to file the complaint seeking the revocation of Professor Saha's tenure. Executive Vice President Lehman will re-affirm that sentiment if questioned about it by Mr. Karl."

## March 14, 2006 :

In the March 6 hearing, GW administration (Lehman, Tong and Zaghloul ) failed to provide evidence that Prof. Saha received the notice of May 2nd, 2005 meeting. On March 14, the panel deliberated and decided to strike the May 2nd, 2005 meeting and the vote of the faculty at that meeting from the record.

## March 20, 2006

VP Lehman testified on March 20 on the issue of May 2nd, 2005 meeting. His testimony is well summarized by Chair Schaffner in the following response to a question from Prof. Saha's counsel Karl:

4

**Hearing Chair Schaffner** : I think you (i.e. Karl) have already asked what the significance of the May 2nd meeting was, and I think he (i.e. Lehman) already testified that it wasn't in his belief, so I think that has been asked and answered. (ref. Transcript p-45, March 20, 2006).

The only conclusion one can draw from the above sequence of events is ***that VP Lehman and Mr. Mishkin flip-flopped after the panel deliberated and decided to strike the May 2nd, 2005 meeting and the vote of the faculty at that meeting from the record.***

More irony is that Schaffner panel did not have any objection to such flip-flop though Chair Schaffner, on the Notice Issue, on March 6, went on to say : *"We understand that is perhaps more relevant to our considerations than sort of this just traditional notice ----if he (i.e. Plaintiff Saha) didn't have notice, he lacked due process, and therefore, we can't even really revoke tenure during this proceeding ------"* (Re. Transcript 03/06/2006 at p.396).

***Thus VP Lehman and Mr. Mishkin flip-flopped. Also, the hearing was initiated via a fraudulent process, because without the May 2nd meeting VP Lehman wouldn't have faculty input in his June 15 meeting, and wouldn't write June 27 & July 26 letter to Prof. Saha and wouldn't finally write Sept. 16, 2005 complaint for tenure revocation.***

## B. Falsification of Evidence by Mr. Mishkin (GWU)

GW Counsel Mr. Mishkin falsified a document which, in the assessment of GWU, was very important for making a decision towards revoking tenure of Prof. Saha.

The falsified document as well as the original will be made available upon request of the court.

## C. Credibility of Lehman :

■ **June 27 & July 26, 2005 Letters :** During GW Faculty Senate Hearing, Lehman was extensively questioned on the issue of these two letters and Lehman confessed that he knew Prof. Saha did not receive those certified letters, and those two letters were found returned to GWU. Thus Lehman was

disingenuous in writing the August 29, 2005 suspension letter that led to tenure revocation hearing. Plaintiff Saha request the court to consider this evidence to asses the credibility of Defendant Lehman.

- **February 5, 1997 Letter :** Plaintiff asserts that upon request of the court, evidence will be introduced to establish that in the past, Lehman administration played foul with the delivery of February 5, 1997 suspension letter which lead to a false arrest in 1997.

## D. Fraudulent Hearing

- By allowing the deliberation, Schaffner Panel directly contradicted Schaffner's own Statement : *"--if he (i.e. Plaintiff Saha) didn't have notice, he lacked due process, and therefore, we can't even really revoke tenure during this proceeding ----"*

- Hearing was procedurally illegitimate not only because of "Lack of May 2nd, 2005 notice" issue but also due to Lehman's deceitful August 29, 2005 suspension letter which he wrote after knowing Prof. Saha did not receive his June 27 & July 26, 2005 letters.

- Any claim of Lehman and Tong that they did not resort to faculty input lacks merit as explained previously under "Flip-flop". Also President Trachtenberg on April 17, 2006 hearing contradicted Lehman's testimony. Trachtenberg said that Vice President Lehman told him there was an initiative on the part of the SEAS Faculty to revoke Professor Saha's tenure (Plaintiff Exhibit M: Transcript, pp.5-7, Hearing April 17, 2006)

*The Plaintiff argues that Defendants (GWU) initiated the faculty hearing through a fraudulent process, rigged the outcome of the panel deliberation against the Plaintiff and used that deliberation to stop Plaintiff's pay cheque effective March 1st, 2007.*

I do hereby state to my knowledge, information and belief that the above mentioned statements are true and correct.

*Debabrata Saha*

Debabrata Saha

Date : Feb. 28, 2008

6



The George Washington University
WASHINGTON DC

Plaintiff Exhibit F
1 page

VICE PRESIDENT FOR ACADEMIC AFFAIRS

May 22, 1992

Dr. Debabrata Saha
2947 Waterford Court
Vienna, VA 22180

Dear Dr. Saha:

I am pleased to inform you that at its meeting on May 21 the Board of Trustees approved the recommendation of the Department of Electrical Engineering and Computer Science that you be awarded the status of continuous tenure effective with your 1993-94 appointment.

Sincerely,

Roderick S. French
Vice President for Academic Affairs

c:  Acting Dean Gilmore

## THE GEORGE WASHINGTON UNIVERSITY
WASHINGTON DC

**Plaintiff Exhibit J**
1 page

EXECUTIVE VICE PRESIDENT FOR ACADEMIC AFFAIRS

November 18, 2005

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Professor Saha:

Professor Korman informed me of your November 10, 2005 inquiry regarding your teaching status for the Spring 2006 semester. As I stated in my letter to you dated 29 August, as modified by my letter dated 3 October, you are on paid suspension until further notice.

If you have any questions, please feel free to call me.

Sincerely,

Donald R. Lehman

cc: Professor Korman

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

**Plaintiff Exhibit K**

3 pages

DEPARTMENT OF ACCOUNTANCY

voice: (202) 994-3955
fax: (202) 994-5164
moersen@gwu.edu

January 30, 2008


Dr. Debabrata Saha
9409 Fairpine Lane
Great Falls, VA  22066
By Fax to (703) 757-5418

Dr. Donald R. Lehman
Executive Vice President for Academic Affairs
The George Washington University
Rice Hall, Suite 813
2121 I Street, NW
Washington, DC 20052
Hand Delivered

Re:    Grievance by Dr. Debrabata Saha against The George Washington University

Dear Doctors Saha and Lehman,

I am the Hearing Officer presiding on the three-person Hearing Committee that was appointed to review the Grievance filed by Dr. Saha against The George Washington University.   Our appointment is in accord with the George Washington University Faculty Code, which is the source of the substantive and procedural rights pertaining to faculty grievances.   We have convened the Hearing Committee and read the documents submitted by the parties, including the following with all of their attachments:

- The original Grievance dated December 6, 2005.

- Dr. Kurt Darr's undated email request that the parties submit more information relevant to the Grievance.

- Dr. Saha's response dated May 10, 2007.

- Attorney Douglas Mishkin's response to the Grievance on behalf of the University, dated April 17, 2007 and annotated May 11, 2007.

Letter to Drs. Saha and Lehman
January 30, 2008
Page 2 of 3

Under the procedures specified in the Faculty Code, after affording the parties an opportunity for argument, the Hearing Committee will make a determination whether a hearing is warranted. Therefore, in accordance with the Faculty Code, and to ensure the parties to the Grievance have a sufficient opportunity for argument, we request that the Grievant and Respondent submit written arguments to the Hearing Committee on the following two issues:

1. Does the Grievance "allege facts sufficient to state a Grievance under the Code"?

2. Is the Grievance "based on evidence or allegations substantially the same as those that have previously been heard or decided, or that could have been presented in a previous hearing"?

   *Procedures for the Implementation of the Faculty Code*, Article E, paragraph 4(b)(3), p 27.

The Hearing Committee believes that the best way to assure that the proceedings are fair to both parties, the arguments are relevant, and its consideration of the matter is expeditious, is by requiring that the parties' written arguments conform to specific deadlines and page limits. Therefore, the parties must pay attention to the enclosed *Schedule for Submitting Written Arguments*.

The Hearing Committee's decision will be based only on the documents already received and on written arguments that conform to the enclosed Schedule; however, the Hearing Committee reserves the right to call for oral argument if the Hearing Committee deems it necessary.

Finally, the parties must base their arguments on the standards spelled out in the Faculty Code for determining what constitutes a proper grievance. Such standards are found in several sections of the Faculty Code, and the Hearing Committee wishes to see written arguments referencing those standards where they apply. In particular, the Hearing Committee notes the following provisions of the Faculty Code:

- "A grievance may only be maintained against the University for official acts." *Procedures*, Art. E, paragraph 4(a)(2), p. 25.

- "The Grievance shall set forth with particularity the nature of the dispute, specifying, consistent with Article X. B., the rights or privileges under the Faculty Code alleged to have been violated, the specific act or acts alleged to constitute the violation, and the remedy sought." *Procedures*, Art. E, paragraph 4(a)(3), p. 25.

- "No grievance may be maintained on the basis of error that did not affect the substantial rights of the Grievant." *Procedures*, Art. E, paragraph 4(a)(3), p. 25.

Letter to Drs. Saba and Lehman
January 30, 2008
Page 3 of 3

- To maintain a grievance, the complaining party must allege that he or she has suffered a substantial injury resulting from violation of rights or privileges concerning academic freedom, research or other scholarly activities, tenure, promotion, reappointment, dismissal, or sabbatical or other leave, arising from:

  1. Acts of discrimination prohibited by federal or local law;
  2. Failure to comply with the Faculty Code, or Faculty Handbook, or other rules, regulations, and procedures established by the University;
  3. Arbitrary and capricious actions on behalf of the University, or arbitrary and capricious applications of federal or local statutes and regulations; or
  4. Retaliation for exercise of Code-protected rights.

*Faculty Code*, Article X.B., pp. 16-17.

Dr. Jan Orenstein and Dr. Larry Williams, the other two members of the Hearing Committee, join me in looking forward to your reply.

Sincerely,

Leo C. Moersen, J.D., CPA
Associate Professor of Accountancy
 and Business Law

enclosure
copy:  Dr. Kurt Darr
       Douglas B. Mishkin, Esq.
       Dr. Jan Orenstein
       Dr. Lilien Robinson
       Richard A. Weitzner, Esq.
       Dr. Larry Williams

**Plaintiff Exhibit L**

5 pages



**THE GEORGE
WASHINGTON
UNIVERSITY**
WASHINGTON DC

Via Courier and First Class Mail

March 1, 2007

Professor Debolonia Saint
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Professor Saint:

I have been informed by President Stephen Joel Trachtenberg that Executive Vice President Donald Lehman recused himself from determining, under Section 7 of the Grievance Procedures, whether there are compelling reasons not to implement the Dispute Resolution Committee's decision to terminate your tenure for adequate cause. He has further informed me that Dean Roderick Lawrence, to whom that role was delegated, found no compelling reasons (as per the enclosed memorandum). Therefore, the decision will be implemented.

Your tenure, and your University faculty appointment, is terminated effective March 1, 2007.

**THE GEORGE WASHINGTON UNIVERSITY**
W A S H I N G T O N   D C

DEPARTMENT OF ELECTRICAL AND COMPUTER ENGINEERING

Dr. Can E. Korman
Chair, Dept. of Electrical and Computer Engineering
The George Washington University
Washington, D.C. 20052

March 16, 2007

Dear Dr. Korman :

I think that information you provided in your letter of March 13, 2007 lacks merit of official notification of termination of appointment. Neither me nor my attorney received any official notification. Your suggestion is greatly premature and I decline to meet your demand without the due process a faculty member is entitled to.

Books, journals, notes and personal belongings in my office are very valuable to me and should not be displaced or disposed of *without my knowledge and without my presence*. I strongly urge that you maintain your patience till the matter is resolved. In this context, President Trachtenberg communicated to me that Executive Vice President Donald Lehman recused himself. I hope you will arrange new key(s) so that my faculty right is not violated and I may continue to use my office.

I would appreciate your attention to this matter at your earliest. A voice mail at 4-7175 as a preliminary response will be highly appreciated.

Sincerely,

Debabrata Saha

Debabrata Saha
Dept. of ECE

cc :   Professor Lilien F. Robinson, Senate Executive Committee Chair
        Dr. John F. Karl, Jr., Legal Counsel of Debabrata Saha

Enclosures : The letter dated March 13, 2007

SCHOOL OF ENGINEERING AND APPLIED SCIENCE

# THE GEORGE WASHINGTON UNIVERSITY
WASHINGTON DC

**DEPARTMENT OF ELECTRICAL AND COMPUTER ENGINEERING**

**Via Courier and First Class Mail**

March 13, 2007

Dr. Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Dr. Saha:

I have been informed that your faculty appointment was terminated on March 1, 2007. Please contact Chandra Hopkins of the ECE Department at (202) 994-2152, by no later than March 20, 2007, to schedule a time to come and retrieve your personal belongings from the ECE Department Office.

Thank you.

Sincerely,

Can E. Korman
Chair

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

THE PRESIDENT

December 28, 2006

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, Virginia  22066

Via Courier

Dear Professor Saha:

I understand that on December 12, 2006, while I was out of the office on travel, you hand delivered a package for my attention.  Upon my return, I had the package opened and was told that it contained two documents:  a letter dated December 12, 2006 from you to me and a separate bound document dated December 12, 2006 captioned, "A Compelling Account:  Flawed Deliberation of Schaffner Panel."

I have not read either document as I am told it would be inappropriate for me to do so.  I am, therefore, on the advice of counsel, returning both documents to you.

On a related matter, you should know that Executive Vice President Donald Lehman requested that he be recused from his role contemplated under Section 7 of the Grievance Procedures, i.e., deciding whether "there are compelling reasons not to implement the relevant Committee's decision."  I have accepted his request and have appointed Dean Frederick Lawrence of the Law School to serve in his place.

Sincerely,

Stephen Joel Trachtenberg
President

SJT/sk

Enclosures:  2 – as aforementioned

**THE GEORGE
WASHINGTON
UNIVERSITY**
WASHINGTON DC

November 18, 2005

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Professor Saha:

Professor Korman informed me of your November 10, 2005 inquiry regarding your teaching status for the Spring 2006 semester. As I stated in my letter to you dated 29 August, as modified by my letter dated 3 October, you are on paid suspension until further notice.

If you have any questions, please feel free to call me.

Sincerely,

Donald R. Lehman

cc:    Professor Korman

Page 5

1                    P R O C E E D I N G S                    **Plaintiff Exhibit M**
3 pages

2     Whereupon,

3                STEVEN JOEL TRACHTENBERG,

4     was called as a witness and, after having been

5     first duly sworn by the Notary Public, was

6     examined and testified, as follows:

7          DIRECT EXAMINATION ON BEHALF OF PROF. SAHA

8                BY MR. KARL:

9          Q.     Good morning, are you aware of any of

10    the prior testimony in this matter?

11         A.     No, sir.

12         Q.     Okay, you've never read any of the

13    transcripts or anything?

14         A.     Didn't even know of their existence.

15         Q.     Did you see any of the documents

16    relating to your meeting with Prof. Saha that

17    you've produced?

18         A.     Yes.

19         Q.     Which ones did you see?

20         A.     I can't remember that, but it was some

21    letters that I wrote him.

22         Q.     Anything else?

1        A.    No.

2        Q.    Did you see Prof. Saha's memorandum of

3    his conversation with you in 1997?

4        A.    Yes.

5        Q.    Okay, did you have a similar

6    memorandum of that conversation?

7        A.    No.

8        Q.    Do you have any records of your

9    meeting with him in 1997?

10       A.    No.

11       Q.    Do you have any files separately

12   dealing with Prof. Saha?

13       A.    No, not that I'm aware of anyhow.

14       Q.    Was there ever a request made to you

15   in '96, '97 to revoke Prof. Saha's tenure?

16       A.    I don't recollect.

17       Q.    How about 1999?

18       A.    I don't recollect.

19       Q.    2002?

20       A.    The problem is giving you a date.

21             Within memory, Vice President Lehman

22   came to see me and said that there was an

1    initiative at the School of Engineering to revoke

2    Prof. Saha's tenure.

3         Q.    **And was this initiative on the part of**

4    **faculty?**

5         A.    I believe that's right.

6         Q.    **When was this meeting?**

7         A.    I can't recall.

8               MR. MISHKIN:  I don't think we've

9    heard anything about a meeting.

10              BY MR. KARL:

11        Q.    **Okay, when was this communication?**

12        A.    When?

13        Q.    **Yes.**

14        A.    I don't know.

15        Q.    **This year?**

16        A.    As I say, within memory, but I can't

17   you a date.

18        Q.    **Did do you think it was within the**

19   **last year?**

20        A.    It may well have been.

21        Q.    **Could it have been the last six**

22   **months?**

# *A Grievance*

**Plaintiff Exhibit N**
**5** pages

*against*

**Execut. VP Don Lehman,**
**Dean Timothy Tong, School of Eng. and Applied Sci.**
**and**
**The George Washington University**

*by*

**Professor Debabrata Saha**
**The George Washington University**
**801 22nd Street, N.W.**
**Washington, D.C. 20052**
**U.S.A.**
**Response : May 10, 2007**

**Debabrata Saha**
9409 Fairpine Lane
Great Falls, Viginia 22066, U.S.A.
(703)757-5418

Professor Kurt Darr
Chair, Dispute Resolution Committee
The George Washington University
2175 K Street, N.W., Suite 820
Washington, D.C. 20037

May 10, 2007

**Re. : Grievance Dated December 06, 2005**

Dear Professor Darr :

      Enclosed is my response to your letter dated April 26, 2007. This response first addresses the April 17, 2007 letter of GWU counsel, Mr. Mishkin. It then explains with specificity (a) how the issues of the grievance (Appendix I) are different from what the Senate panel chose to deliberate on, (b) what evidence were barred or overlooked or not produced for examination, and why the grievance must go forward. At the outset, it should be noted that the conduct of the Schaffner panel itself was a cause for continued grievance during hearing and only strengthened the original grievance even further.

      The following are some emphasis of the response :

(1) Without any notification, GWU unlawfully stopped pay cheque of Prof. Saha retroactively effective March 1st, 2007. This only demonstrates the act of continued malice and amends the original grievance.

(2) Without any resolution to the Appeal or any notification of termination of appointment from President Trachtenberg, the tenure revocation process fell short of completion.

(3) Denial of entry to the ECE office by changing the lock is an act of harassment and denial of faculty rights that further enhances the original grievance. On May 7, 2007 Prof. Saha found a number of boxes left unattended at the door step of his residence; please refer to Appendix A for the May 7th event.

(4) The broad issues of the original grievance (without the aforementioned amendments) were neither addressed nor deliberated on. The Senate panel, as it clearly mentioned in its summary, chose to deliberate on a grievance brought by GWU ( not by Prof. Saha). It should be noted that just a few days before writing April 17 letter, Mr. Mishkin included **TWENTY New Names** (who did not participate in the hearing) in GWU's list of Individuals with Discoverable Information under F.R.C.P. 26(a)(1)(A); this is in connection with the litigation against Lehman & GWU that addresses only part of the Grievance. *This certainly confirms that not all the evidence were heard or presented even from GWU side.*

      In addition, Prof. Saha will present evidence that were barred, overlooked, or missed because of narrow scope of the panel hearing. Evidence will be introduced to prove misleads and perjury by high ranking GWU officials and GWU lawyer Mr. Mishkin. Prof. Saha also requests the Grievance Committee to adopt strict enforcement on GWU in submitting evidence as requested by the committee. In the last hearing, GWU insisted on being deaf to such requests. In particular, Grievance Committee should enforce **VP Lehman to produce his October 30, 1997 letter** which he used in his complaint for tenure revocation.

1

The Schaffner panel and the Lehman administration went beyond its scope of investigation to tarnish my research which were not even addressed in the original complaint (Appendix J). Hearing transcript confirms that the panel denied Prof. Saha the opportunity to elaborate on his research. I, therefore, suggest that the Grievance Committee enforces **the Intellectual Stalwart of the George Washington University** to qualify his position on Prof. Saha's research on Information Theory and Physics.

The procedural misconduct of the Schaffner panel is so **abominable** that it is not acceptable by any standard in any part of the civilized world.  This response together with the enclosed companion academic paper *"A Compelling Account : Flawed Deliberation of Schaffner Panel"*, dated December 12, 2006 addresses this aspect in greater detail.

Again, I suggest that Grievance must go forward with the aforementioned amendments.

Thank you for your attention.

Regards.

Debabrata Saha

Debabrata Saha
Home Phone : 703-757-5418

cc :    Prof. Lilien F. Robinson, Chair of Senate Executive Committee
        Mr. Douglas Mishkin, GWU Counsel

2

**Appendix H**

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

April 17, 2007

Douglas B. Mishkin
202-457-6020
dmishkin@pattonboggs.com

Professor Kurt Darr
Chair, Faculty Senate Dispute Resolution Committee
The George Washington University
Health Services Management
2175 K Street, NW, Suite 700
Washington, DC  20052

Re:    Grievance Filed By Debabrata Saha on December 6, 2005

Dear Professor Darr:

As you know, this firm represents The George Washington University (the "University") regarding various matters involving Dr. Debabrata Saha. By this letter, the University respectfully requests that the Dispute Resolution Committee of the Faculty Senate (the "Committee") dismiss the pending grievance filed by Dr. Saha (the "Grievance"). The Grievance was filed on December 6, 2005, almost three months after the University filed its complaint seeking the revocation of his tenure (the "Complaint"). The Committee has held the Grievance in abeyance pending the final resolution of the Complaint. As noted below, there has been such a final resolution.

Dr. Saha makes two arguments in his Grievance.  The first is that the University retaliated against him for his role as a "whistleblower" in what he describes as the May 1996 "grading scandal" (when he withheld the blue books of 26 students for two months). Dr. Saha made the same contention through the proceedings before the Hearing Committee that initially heard the Complaint (the "Hearing Committee").  See Opening Statement of Saha Attorney John Karl, Esq., January 30, 2006 Tr. 25:1 to 26:4 ("...there's a fundamental issue here of academic freedom, and you will hear testimony about a 1996 grading scandal....[W]hat the evidence will show is that Professor Zaghloul's motivation was to settle an old score when she became acting chair [in 2005]") and Tr. 36:4-10 ("...was not Professor Saha exercising his academic freedom and wasn't he a whistleblower, in the context of the 1996 scandal, and should the animosity that was created by the scandal be allowed to lead to a series of events that would cause him to be deprived of his tenure."); Amended Answer pp. 2-4, "The 1996 Grading Scandal;" Statement of Debabrata Saha, pp.

**PATTON BOGGS**
ATTORNEYS AT LAW

Professor Kurt Darr
April 17, 2007
Page 2

1-4, "1996;" Saha Testimony April 3, 2006 Tr. 108:5 to 172:3; Post-Hearing Brief of
Debabrata Saha, pp. 16-18. The Hearing Committee referenced this issue in its decision of
July 24, 2006, affirmed by the Committee on December 4, 2006. There is no need to rehash
this argument in another grievance proceeding. Furthermore, Dr. Saha did not file a
grievance about these matters in 1996, or when he was suspended and reinstated in 1997, or
when he was suspended and reinstated in 1999.

Dr. Saha's second argument in his Grievance concerns his fourth and final
suspension in August 2005. But Dr. Saha also addressed this sequence of events before the
Hearing Committee. See Amended Answer at ¶ 61; Post-Hearing Brief of Debabrata Saha at
pp. 37-38; Opening Statement of Saha Attorney John Karl, Esq., January 30, 2006 Tr. 32:8-
12 and 36:11 to 37:14.

You responded to the Grievance in a December 8, 2005 email to Dr. Saha: "It is my
decision to hold your grievance in abeyance until the current hearing process is complete."
As you know, that process culminated in a unanimous decision of the Hearing  Committee
that the University had demonstrated clear and convincing evidence of adequate cause for
tenure revocation, followed by a unanimous decision of the Dispute Resolution Committee
affirming that decision. Thereafter, the University Administration, having found no
compelling reasons not to implement the decision of the Committee pursuant to Section
E.7. of the Grievance Procedures, notified Dr. Saha, in a letter dated March 1, 2007, that his
tenure had been revoked and his employment terminated.

As the preceding summary of events reflects, no purpose will be served by
conducting additional proceedings in response to the pending Grievance. Accordingly, the
University requests that the Dispute Resolution Committee dismiss Dr. Saha's pending
Grievance without further proceedings.

Thank you for your attention.

Yours truly,

Douglas B. Mishkin

cc:    John F. Karl, Esq.

40

# Plaintiff Exhibit Q

1. Lehman's June 27, 2005 letter
2. Lehman's July 26, 2005 letter
3. Lehman's August 29, 2005 letter
4. Lehman's 09/02/05 e-mail
5. Tenure Revocation Complaint dated Sept. 16, 2005
6. Testimony about June 27 and July 26 letters (page 49, 50)
7. Lehman's Testimony (page 52)

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

EXECUTIVE VICE PRESIDENT FOR ACADEMIC AFFAIRS

27 June 2005

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Professor Saha,

I am writing this letter to request that you make an appointment to see me at your earliest convenience. The purpose of our meeting will be to review my letter to you dated 5 April 1999 which was revised on 29 April 1999. It is time for us to address the issues and conditions to which we agreed through your signing of that letter on 30 April 1999. It has come to my attention that not all of the conditions of the letter have been followed. Therefore, you and I need to meet to discuss the mediation of the current situation and have an understanding as to possible actions that I shall need to take in order to assure that we have full compliance with my April 1999 letter.

Please call Ms. Keely Walston, who maintains my calendar. Her number is (202) 994-7297. I ask that you do this at your earliest convenience because I want to have this meeting before the end of August. Thank you.

Sincerely,

Donald R. Lehman
Executive Vice President for Academic Affairs

# THE GEORGE
# WASHINGTON
# UNIVERSITY
WASHINGTON DC

EXECUTIVE VICE PRESIDENT FOR ACADEMIC AFFAIRS

26 July 2005

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Professor Saha:

In my letter of 27 June 2005 to you, I asked that you make an appointment to see me at your earliest convenience in order to discuss your adherence to the conditions contained in my letters of 5 April and 29 April 1999. Having not heard from you, my Assistant, Keely Walston, left you a voice mail message on 11 July asking that you call her to schedule a meeting. Still, you have not responded. Therefore, I have set a meeting for August 19, 2005, at 4:00 p.m. in my Office. If you have an unavoidable conflict at that time you must call my Office by no later than noon on August 15, 2005 to reschedule. This meeting must in any case take place by August 25, 2005.

If you fail to attend the meeting, I will proceed without your input.

Sincerely,

Donald R. Lehman
Executive Vice President for Academic Affairs

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

EXECUTIVE VICE PRESIDENT FOR ACADEMIC AFFAIRS

August 29, 2005

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Re: Suspension without pay

Dear Professor Saha:

I am once again disappointed, but not surprised, by your failure to respond in any way to my letters of June 27 and July 26, 2005 and follow up phone calls, for a meeting, and your failure to attend the meeting I scheduled for August 19, 2005. It is with some regret, but with resolve, that I take the following action:

Effective immediately, and until further notice, you are hereby placed on unpaid suspension. Your classes for the Fall 2005 semester have been reassigned. You are not to come to either campus to teach or perform any other University responsibilities. Further, it is my intention in the very near future to initiate proceedings to terminate your tenured appointment, in accordance with Article V.C. of the Faculty Code and Section F of the "Procedures for the Implementation of the Faculty Code." -

You may call my office if you wish to discuss this.

Sincerely,

Donald R. Lehman
Executive Vice President for Academic Affairs

cc:    Tim Tong, Dean, School of Engineering and Applied Science

On 9/2/05, Donald Lehman <lehman@gwu.edu> wrote:
Can:

Thanks for your message. After reading Brana's message, I raised several questions with Tim Tong. I don't believe he has yet had a chance to answer them.

I understand fully your concerns. At the same time, I don't know what Professor Saha knows or does not know. For example, are we sure that he has actually seen and read my letter to him?

With regard to your other suggestions, everyone's security on campus *is top priority*. It appears that *Professor Saha left the classroom in a peaceful manner last evening*. If he has seen my letter, he should know that he is not to be teaching or appearing for classes, etc. Therefore, I do not think it is wise for us to have obvious coverage of the classes that he was originally assigned to teach. However, for the first few classes, it is wise to have a plain-clothed officer near by.

With regard to the Department, the steps you outline appear to be reasonable through the use of the "panic" buttons that have been placed there for that purpose.

9/6/2005

Don

Donald R. Lehman
Executive Vice President for Academic Affairs
         and
George Gamow Professor of Theoretical Physics
The George Washington University
Rice Hall 813                    Phone:  (202) 994-6510
2121 I Street, NW                FAX:    (202) 994-0709
Washington, DC 20052                E-mail: lehman@gwu.edu

On Fri, 2 Sep 2005, Professor Can E. Korman wrote:

> CONFIDENTIAL
>
> Don & Tim,
>
> I am seriously concerned about the safety of my faculty, staff and students.
> The UPD today failed to do its job, and the ECE 243 students were
> unnecessarily exposed to situations that are unprofessional, embarrassing
> and frightening. For the sake of personal safety and professional conduct of
> academic work, I hereby ask of you to take the necessary actions in order to
> prevent Prof. Saha from being able to enter ECE department premises and
> other areas where ECE faculty, staff and students are regularly present as
> part of their routine daily duties and academic endeavors.
>
> Let me continue the report of Prof. Vojcic. Around 7:25PM Thursday night, I
> was at my chair's office working with our Executive Associate Alison Mayhew,
> who was in her adjacent office. She ran into my office somewhat shaken as
> she observed Prof. Saha casually open the department front office door (our
> main front lock has still not been changed and Prof. Saha still has his
> office key that can open the front department door). There was NO police
> escort with Prof. Saha. Apparently UPD felt that it was perfectly acceptable
> to let Prof. Saha go where ever he pleases on campus even though he just
> demonstrated that he can ignore a suspension order by the EVP and attempt to
> teach a class! (I need not remind you of his past violent behaviour towards
> ECE faculty and staff). I immediately instructed Ms. Mayhew to close the
> chair office door and we waited for about 5 minutes. We stopped our work
> UNFINISHED and decided to sneak out of the department. I slowly opened the
> door of the chair's office, made sure that the coast was clear, escorted Ms.
> Mayhew to the elevators and we quickly exited the Academic Center.
>
> Please note that (to my knowledge) this is the third time that Prof. Saha
> has been in the ECE department offices this week. The first known visit (to
> me) was Monday morning before we received his suspension letter, while the
> second visit coincided with him (apparently) finding the suspension letter
> at this office and "fuming with anger" (according to one of my staff members
> Deborah Swanson). He told my staff that he will be back next week. The UPD
> was present at the ECE front office during the second visit.
>
> The evidence of this week indicates that the current UPD security set up was

9/6/2005

GW-SAHA001013

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

OFFICE OF THE DEAN

SCHOOL OF ENGINEERING AND APPLIED SCIENCE

September 16, 2005

Professor Kurt Darr
Chair, Faculty Senate Dispute Resolution Committee
The George Washington University

Dear Professor Darr:

### Complaint Regarding Associate Professor Debabrata SAHA

Associate Professor Saha is a tenured faculty member of the Electrical & Computer Engineering (ECE) Department successor to the Electrical Engineering and Computer Science (EECS) Department in the School of Engineering & Applied Science (SEAS). Through this Complaint, as required under Section F.1. of the Procedures for the Implementation of the Faculty Code, we commence proceedings to dismiss Professor Saha for adequate cause.

Since AY 1991-1992 the faculty of the EECS & ECE Departments has had substantial concerns over his conduct and professional comportment both with students and with his colleagues and staff within the Department. Despite several attempts by successive chairs of the Department and a number of warnings from senior administrators, he has continued to cause disturbances both inside the classroom and within the confines of the department. These disruptions have led students in his class to complain either verbally or in writing to the current chair of ECE. Faculty and staff members in the Department have experienced similar incidents which have led to disquiet and unease. The resulting atmosphere in the Department when matters concerning Professor Saha arise, on a more or less regular basis, is tense. Moreover, Professor Saha has exhibited a pattern of flagrant disregard of his faculty responsibilities in a variety of areas, such as submitting annual reports, attending department meetings and attending meetings with his colleagues, department chairs, deans, and the Executive Vice President for Academic Affairs. Professor Saha has continued this pattern of conduct despite having agreed, as a condition to reinstatement from suspension in 1999, to comply with these requirements.

The situation is therefore that Professor Saha is unfit to perform his duties as laid out in the Faculty Code of the George Washington University because he has persistently neglected his professional responsibilities as specified in the Code. Furthermore, his gross and continued personal misconduct on a number of occasions has destroyed his academic usefulness. Consequently his removal from tenured status based on adequate cause is justified.

The following documentation and reference material supports this Complaint:

(i)     The Personnel Committee of the EECS Department voted to recommend Associate Professor Saha be reprimanded for the following (see Memorandum from the Personnel Committee of the EECS dept to Dean Frieder dated Oct 30, 1996):

(a) Failure to meet course EE241-AL at the Virginia Campus during the Fall 1996 as assigned by the department chair and notified to him in writing

(b) Failure to evaluate academic performance fairly and reasonably and to report evaluations promptly

(c) Failure to return the records of 4 seniors thereby excluding them from graduating in a timely manner

(ii)  Despite continued attempts by the faculty and the administration to encourage Professor Saha to perform his teaching, research and service duties, it became necessary for Vice President Lehman to take the unusual step of suspending him from his faculty position in October 1997. (See letter from VP Lehman to Professor Saha dated October 30, 1997). This was the first in a number of progressive disciplinary measures which were taken. Subsequent to this, Professor Saha was suspended for a second time in January 22, 1999. Professor Saha was subsequently re-instated, based on Professor Saha agreeing in writing to several conditions, (11 in all), which were imposed and which he signed on April 30, 1999. (See letter from VP Lehman to Professor Saha dated April 29, 1999).

(iii) Despite Professor Saha's agreement to abide by the conditions in the letter of April 29, he continued his pattern of willfully refusing the reasonable directives of his chair and Dean, ignoring correspondence, failing to participate in departmental administrative committees when detailed by his chair to do so and failing to attend departmental meetings. He has submitted no annual reports, has refused to submit student evaluations of his teaching, and has unjustly criticized his colleagues and members of the administration in inappropriate ways both in front of students and, for example, by posting inflammatory open letters written by himself on the outside of his office door.

(iv)  The Personnel Committee of the ECE Department, at their meeting of May 2, 2005, unanimously passed the following resolution: "The Personnel Committee of the ECE Department accepts the findings of the Fact-Finding Subcommittee on Professor Saha that Associate Professor Saha's actions documented in their report constitute persistent neglect of his professional duties and gross personal misconduct" (see the Minutes of the Personnel Committee dated 2 May 2005 and the report of the Fact-Finding Subcommittee of the Personnel Committee on Professor Saha). The committee authorized the Interim Chair of the department, Professor Zaghloul, the Chair-Elect Professor Korman and the Chair of the Fact-Finding Subcommittee, Professor Wasylkiwskyj, to seek a meeting with the Dean of SEAS, Dean Tong and the Executive Vice President for Academic Affairs.

(v)   On June 15, 2005 the Interim Chair of the ECE department, Professor Zaghloul, the Chair-Elect Professor Korman, and the Chair of the Fact-Finding Subcommittee, Professor Wasylkiwskyj, met with the Dean of SEAS, Dean Tong, and the Executive Vice President for Academic Affairs, and presented the resolution of the ECE Personnel Committee and the report of the Fact-Finding Subcommittee as mentioned in (iv) above.

(vi)    Dr. Lehman asked Professor Saha to come to see him to discuss the matters arising from the events portrayed above. (See letters of June 27 and July 26, 2005). Voice mails were also left on his office voice mail. Professor Saha ignored Vice President Lehman's request for a meeting, and did not attend the meeting he scheduled. Therefore, as of August 29, 2005, Professor Saha was placed on suspension (see letter of that date) and informed that proceedings for the termination of his tenure would be initiated.

Additional documentation is enclosed with this letter.


Dr. Timothy W. Tong
Dean, School of Engineering and Applied Science


Dr. Donald R. Lehman
Executive Vice President for Academic Affairs

Page 49

1    controversy, was he?

2        A    It is possible, yes.  He was disconnected

3    totally as I understand it.

4        Q    So this would have been a good time for a

5    fresh start, wouldn't it?

6        A    Not in my opinion.

7        Q    Okay.  Look at the July 26 letter, this

8    would be Exhibit 152.  How was this letter

9    supposedly sent to Professor Saha?

10       A    This letter was sent by all the means that

11   I indicated a while ago.

12       Q    Do you have any documents to indicate that

13   the letter was sent other than by first class mail?

14       A    I am sure we do.

15       Q    Where are those documents?

16       MR. MISHKIN:  Let me show Mr. Karl the

17   envelope that I located over the weekend, just so

18   everybody knows this is a certified mail envelope

19   addressed to Professor Saha, unopened, bears the

20   postmarks of July 27th, '05 and July 29, '05, with

21   the slip I guess from the postal service return to

22   sender, unclaimed, unable to forward.

Page 50

1          May I show them?

2          HEARING CHAIR SCHAFFNER:  Sure.

3          All right, thank you.

4          BY MR. KARL:

5     Q    **When you send a certified mail letter out**

6     **there is a green card attached, isn't there?  Wasn't**

7     **there a signature --**

8          MR. MISHKIN:  Here is the green card.

9          MR. KARL:  I would like to see that

10    envelope, if I may.

11         BY MR. KARL:

12    Q    **So you knew that by mid-August that**

13    **Professor Saha had not received your letter; is that**

14    **right?**

15    A    When I came back from vacation I was

16    informed that that material had returned, yes.

17    Q    **Was the other letter also returned, do you**

18    **know?**

19    A    I don't remember specifically that.

20    Q    **This would be the June 27th letter?**

21         MR. MISHKIN:  Let me show, this is an

22    envelope bearing June 28 date also addressed to

1          A    August 15th.

2          Q    **When you came back from vacation, you knew**

3    **that Professor Saha had never received either of**

4    **your certified mail letters?**

5          A    Yes.

6          Q    **What steps if any did you take to inform**

7    **Professor Saha about the existence of the meeting**

8    **that you had set for I believe August 19th?**

9               MR. MISHKIN:  Professor Schaffner, we

10   could save some time because we are going over

11   ground we have already gone over in a way that is a

12   bit misleading.  The written testimony says with

13   respect to the June 27th letter instructed my staff

14   to send a letter to Professor Saha's home address by

15   regular mail and by certified mail.  There is the

16   presumptions that the regular mail goes through.

17   The certified mail approach is a belt and suspenders

18   approach.  The fact that it was returned does not

19   mean it wasn't received, and that is one of the

20   virtues of using regular mail as well.  The

21   statement says that we have heard about the

22   certified mail, we have other witnesses lined up, I