UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBABRATA SAHA, Ph.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. NO. 1:08-00087 RCL |
| | ) |
| GEORGE WASHINGTON UNIVERSITY, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S FOURTH MOTION FOR
## PRELIMINARY INJUNCTIVE RELIEF

Plaintiff Debabrata Saha's ("Saha") "Motion for entering Preliminary Injunction" filed

February 27, 2008 (the "Fourth Motion"), like its three predecessor-motions that were denied in this

Court's Memorandum & Order dated March 12, 2008 ("Order"), seeks only monetary relief. The

Fourth Motion contains only two new elements: (1) Saha's attempted fraud upon the Court by

doctoring the March 1, 2007 letter notifying him of the termination of his employment, coupled

with perjuring himself about the document, and (2) Saha's citation of the wrong section of the

wrong version of the University Faculty Code Procedures concerning tenure revocation

proceedings.[1]  As set forth below, the Fourth Motion should be denied.

### ARGUMENT

### I.    SAHA STILL CANNOT DEMONSTRATE "SUBSTANTIAL
### LIKELIHOOD OF SUCCESS ON THE MERITS"

In its Order (at 2-3), this Court found that "plaintiff has no chance of success on the

merits." This Court noted the defects in Saha's three motions that led to that finding: that he had

"not provided the Court with the University's Faculty Code or any other documentary evidence

---

[1] Saha makes a brief argument that Defendants' opposition to the first three motions for preliminary injunction was untimely (it was not) and therefore have "no legal merit." This Court's denial of those three motions moots this argument.

showing that his tenure revocation and termination were in violation of University procedures," that

he had "failed to produce sufficient evidence showing fraud in the University's tenure revocation

process," and that he provided no evidence "that the University's subsequent revocation of his

tenure and termination of his employment are ineffective." Order at 2. As set forth below, Saha's

Fourth Motion cures none of those defects.

A.    **Saha Attempted A Fraud Upon The Court By Doctoring The March 1, 2007 Termination Letter And Committed Perjury About That Document**

Exhibit L to Saha's Fourth Motion is a copy of what Saha affirms is the one-page March 1,

2007 letter from University Provost Dr. John F. Williams, Jr. notifying Saha of the revocation of his

tenure and the termination of his employment. In his Affidavit # 2 in support of his Fourth Motion,

Saha asserts under oath that this letter "does not bear (a) the name of the person who wrote the

letter, (b) does not bear any signature, and (c) does not designate the office it originated from."

Section A(2) of Affidavit # 2 at p. 7. Saha argues that the fact that this letter does not contain that

information substantiates his allegation that the University manufactured this letter (and his

termination) after-the-fact and constitutes a fraud. **The court record shows that it is Saha who**

**has engaged in fraud by doctoring Exhibit L to delete Dr. Williams' name, signature and**

**title, and has committed perjury about that document.**

At the top of Saha's Exhibit L there are two electronic filing "stamps" of the Court. They

are somewhat hard to read because they overlap, but nevertheless they are discernible. One stamp

reflects Saha's filing of Exhibit L along with his Fourth Motion: "Document 16 Filed 02/27/2008

Page 21 of 30." The other stamp is slightly darker: "Document 9-5 Filed 02/20/200 [cut off by

hole punch] Page 2 of 5." The latter stamp shows that Saha's Exhibit L is actually a copy – altered

by Saha -- of the March 1, 2007 Williams letter that Defendants attached as Exhibit 3 to their

Memorandum of Points and Authorities in Support of Motion to Dismiss filed on February 20, 2008 ("Memorandum").

Defendants' Exhibit 3 contains the name "John F. Williams, Jr. Provost," with Dr. Williams' signature above his typewritten name. Toward the bottom of the page in the left-side column, part of the letterhead reads: "Office Of The Provost And Vice President For Health Affairs," with a street address and phone and fax numbers. **Saha's Exhibit L does not contain any of this information – Saha deleted all of this information when he copied Defendants' Exhibit 3 to manufacture his Exhibit L.** In stating under oath in his Affidavit # 2 that the Williams letter had no signer's name or signature or office of origin while deleting that very information from his Exhibit L, Saha perjured himself and attempted to perpetrate a fraud upon this Court. See Young v. Office of the United States Senate Sergeant At Arms, 217 F.R.D. 61, 71 (D.D.C. 2003)("... seeking to obtain or manufacture false testimony 'strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding... Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts.'")(citations omitted). This is the same Saha who asserts (Fourth Motion at 7) that he somehow did not receive this letter that was delivered to him by courier and regular mail. Williams Declaration, Ex. 3 to Memorandum; see also Memorandum Opinion dated March 12, 2008 in Saha v. Lehman, Civil Action No. 06-01493 (RCL) at 2, n.2, and at 3, n.4.

**B.    Saha Has Cited The Wrong Section Of The Wrong Version Of The Faculty Code**

Saha states that "[t]enure revocation and termination of service are strictly guided" by Section B of the 1996 Faculty Code Procedures. Fourth Motion at 4. Saha is doubly wrong. The current version of the Faculty Code is the 2004 version. Ex. A. Revocation of tenure is governed by Sections E and F of the 2004 Faculty Code Procedures. Ex. A at 24-33. Section F, "Procedures for the Dismissal of a Faculty Member for Adequate Cause," prescribes how the University is to

commence a proceeding to "dismiss a tenured faculty member for adequate cause" and the composition of the Hearing Committee that will hear the complaint. Ex. A at 31-32. Section F references the procedures set forth in Section E, "Procedures for Implementation of Article X of the Faculty Code." Ex. A at 33. The University followed all of the requirements of Sections E and F of the 2004 Faculty Code Procedures in terminating Saha's tenure. Memorandum at 3-6, 11-15.

Saha's attempted fraud upon the Court and perjury, coupled with his citation to the wrong section of the wrong version of the Faculty Code, does nothing to change the Court's finding that he "has no chance of success on the merits." Order at 3.

## II.    SAHA STILL CANNOT DEMONSTRATE THAT HE WILL SUFFER IRREPARABLE HARM ABSENT THE INJUNCTION

Saha's Fourth Motion seeks only monetary relief – retroactive reinstatement of his salary. Fourth Motion at 1. In denying Saha's first three motions for a preliminary injunction that also sought only monetary relief, this Court found that Saha's

> claim of irreparable injury is premised entirely on the financial hardship suffered as a result of the University's decision to discontinue his pay . . . [T]he possibility that adequate compensatory or other corrective relief will be available if plaintiff ultimately prevails on the merits weighs heavily against a claim of irreparable harm.

Order at 3. Moreover, Saha says nothing about his attempts, if any, to find other employment. Saha's claim of an irreparable injury is still not "irreparable."

## III.    REQUIRING REINSTATEMENT OF SAHA'S SALARY STILL WOULD HARM THE UNIVERSITY

This Court has found that the University may suffer harm if "a professor whose tenure was revoked for persistent neglect of his responsibilities can receive retroactive and continued payment simply by filing suit." Order at 4. Saha still has not asserted that he did not neglect his professional responsibilities or that the University would not suffer harm by retroactively reinstating his salary.

Instead, he continues to insist on the fiction that his tenure never was revoked and his employment was not terminated on March 1, 2007.

## IV.    AN INJUNCTION STILL IS NOT IN THE PUBLIC INTEREST

This Court has already observed that "it does not serve the public interest for this Court to allow a likely unsuccessful plaintiff to continue to draw a salary when not working." Order at 4.

## CONCLUSION

For the foregoing reasons, Defendants The George Washington University, Mona E. Zaghloul, Wasyl Wasylkiwskyj, Edward Della Torre, Joan Schaffner and Stephen Joel Trachtenberg respectfully request that this Court deny Plaintiff Debabrata Saha's "Motion for entering Preliminary Injunction" filed February 27, 2008.

Dated: March 21, 2008

Respectfully submitted,

Douglas B. Mishkin, DC Bar # 338590
Pamela S. Richardson, DC Bar # 500564
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6482

Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2008 a true and correct copy of the

foregoing Defendants' Opposition to Plaintiffs' February 27, 2008 Motion for Preliminary

Injunctive Relief was sent by regular mail, postage prepaid to the following:

> Debabrata Saha
> 9409 Fairpine Lane
> Great Falls, VA  22066
>
> Plaintiff appearing *pro se*
>
> _____
> Douglas B. Mishkin

EXHIBIT A

The George Washington University

# Faculty Code



# 2004

Amendments to the 2004
Edition of the *Faculty Code*

Amendments – February 8, 2008

By Action of the George Washington University Board of Trustees, February 8, 2008, Article VI, beginning on Page 12, was amended by the addition of the following section:

D. **Parental Childcare Leave:** A regular, active-status member of the faculty shall be entitled to parental childcare leave upon certifying that he or she will provide at least half of the child's care during the leave period, subject to the terms and conditions set forth in this section. Parental childcare leave shall include release from teaching responsibilities and service responsibilities for one semester with full salary and benefits, and such leave shall terminate within twelve months after a minor dependent child is born or adopted or enters the faculty member's home under a foster care arrangement. During such leave, faculty members shall continue providing thesis and dissertation advising to students whom they advised prior to the leave unless adequate alternative arrangements are made. For faculty members engaged in externally funded grant or contract related activities, parental childcare leave shall include release from responsibilities to the University, but shall not include release from responsibilities to the external funding sources unless alternative arrangements are approved by such sources. A regular, active-status faculty member is entitled to parental childcare leave for a maximum of two minor dependent children who are born or adopted or enter the faculty member's home as foster children after the starting date of the faculty member's appointment at the University. Parental childcare leave under other circumstances or for other faculty, including leave with full or partial salary, may be granted at the discretion of the Vice President for Academic Affairs, after consultation with the appropriate department chair (if applicable) and dean.

Amendments – February 6, 2004

By Action of the George Washington University Board of Trustees, February 6, 2004, Article IV, Section A.3.1., appearing on Page 5, was amended as follows:

a) Insert new sub-section "b) 3)" to read, "A one-year extension of the probationary period shall be granted to requesting faculty who become new parents and apply within twelve months of becoming new parents by submitting a request to the relevant academic officers setting forth his or her reason for requesting the extension. "New parents" for purposes of this provision are faculty members who become parents of a newborn or adopted child. The tenure clock extension may be elected regardless of whether the faculty member takes a full or partial leave in connection with becoming a new parent. However, no such request shall be granted if made after September 10 of the academic year in which the tenure decision would have been made by the department or school absent the extension requested. If a faculty member becomes a new parent a second time during the probationary period, a second tenure clock extension may be granted at the discretion of the Vice President for Academic Affairs, after consultation with the appropriate department chair (if applicable) and dean. Other requests for tenure clock extensions for family related purposes may be granted at the discretion of the Vice President for Academic Affairs, after consultation with the appropriate department chair (if applicable) and dean."

b) Change existing sub-section "b) 3)" to "b) 4)"

By action of The George Washington University Board of Trustees, effective October 13, 2006, the following changes to the *Faculty Code* were approved:

*That the Faculty Code be amended by adding the following new subsection at the end of Article I.B.:*

5. **Special Service:** Special service faculty may be appointed, upon recommendation of the appropriate faculty and officers of the administration, as professor of practice, associate professor of practice, and assistant professor of practice, or with such other special service faculty designation as may be approved by the Vice President for Academic Affairs, in order to fulfill special teaching or program administration or development needs. Such appointments do not provide tenure, and special service faculty are not expected to generate productive scholarship.

*That the Faculty Code be further amended by adding the following new section after Article IV.A.5:*

6. **Criteria and Procedures for Appointments, Reappointments, and Promotion of Regular, Active-Status Faculty Serving in Non-Tenure-Accruing Appointments**

Each school and each department (except in the case of nondepartmentalized schools) shall take the following actions with regard to appointments, reappointments, and promotion of regular, active-status faculty serving in non-tenure-accruing appointments:

a) In accordance with this Article IV and Part B of the Procedures for the Implementation of the Faculty Code, the faculty of each of the foregoing units shall approve and publish the criteria to be applied in making decisions regarding appointments, reappointments, and promotion of regular, active-status faculty serving in non-tenure-accruing appointments. These criteria shall be based on the purpose(s) of the non-tenure-accruing appointments. Each letter of appointment for a regular, active-status faculty member serving in a non-tenure-accruing appointment shall include appropriate references

to the criteria and purpose(s) applicable to such appointment.

b) Decisions regarding appointments, reappointments, and promotion of regular, active-status faculty for non-tenure-accruing positions at a rank lower than the rank of professor may be based on published criteria that assign different weights to the factors of teaching ability, productive scholarship, and service to the University, professional societies and the public than the published criteria that would be applied to faculty members serving in tenure-accruing appointments in the applicable department or nondepartmentalized school; provided, however, that

1) none of the foregoing factors shall be assigned a weight of zero, and each regular, active-status faculty member serving in a non-tenure-accruing position shall be expected to generate evidence of teaching ability and productive scholarship; and

2) the weights to be applied to the foregoing factors shall be based on the purpose(s) of the particular non-tenure-accruing appointments, and such weights shall be explicitly stated in the applicable letters of appointment or reappointment; and

c) Decisions regarding appointments, reappointments, and promotion of regular, active-status faculty for non-tenure-accruing positions at the rank of professor shall be based on published criteria that are substantially comparable (though not necessarily identical) to the published criteria that would be applied to faculty members serving in tenure-accruing appointments in the applicable department or nondepartmentalized school.

d) Teaching loads and service assignments for all regular, active-status faculty in a department or nondepartmentalized school should be structured so that during the term of each appointment, consistent with the University's needs, each regular, active-status faculty member in that department or school has a reasonable opportunity

to generate evidence of teaching ability and productive scholarship.

# *Contents*

**Faculty Code**
| | | |
|---|---|---|
| **I.** | **Grades of Academic Personnel** . . | 1 |
| A. | Retired Status . . . . . . . . . . . . . . . . . | 1 |
| B. | Active Status . . . . . . . . . . . . . . . . . . | 1 |
| 1. | Regular . . . . . . . . . . . . . . . . . . . . . | 1 |
| 2. | Limited Service . . . . . . . . . . . . . . . | 2 |
| 3. | Visiting . . . . . . . . . . . . . . . . . . . . . | 2 |
| 4. | Research Staff . . . . . . . . . . . . . . . . | 2 |
| **II.** | **Academic Freedom** . . . . . . . . . . . | 2 |
| **III.** | **Professional Responsibilities** . . . . | 2 |
| **IV.** | **Appointment, Reappointment, Promotion and Tenure** . . . . . . . . | 4 |
| A. | Appointment . . . . . . . . . . . . . . . . . . | 4 |
| 1. | Statements of Terms and Conditions . . . . . . . . . . . . . . . | 4 |
| 2. | Limited Service Appointments . . . . . . . . . . . . . . . | 4 |
| 3.1 | Regular Tenure-Accruing Appointments . . . . . . . . . . . . . . . | 5 |
| 3.2 | Regular Non-Tenure-Accruing Appointments . . . . . . . . . . . . . . . | 6 |
| 4.1 | Stated Periods by Rank for Regular Tenure-Accruing Appointments . . . . | 6 |
| 4.2 | Stated Periods by Rank for Regular Non-Tenure-Accruing Appointments . . . . . . . . . . . . . . . | 7 |
| 5. | Criteria and Procedures for Appointments . . . . . . . . . . . . . . . | 7 |
| B. | Promotion . . . . . . . . . . . . . . . . . . . . | 7 |
| C. | Tenure . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| D. | School-Wide Personnel Committees . . . . . . . . . . . . . . . . . . | 9 |
| E. | Nondiscrimination . . . . . . . . . . . . . | 9 |
| **V.** | **Termination of Service** . . . . . . . . . | 10 |
| A. | Expiration of Definite-Period Appointments . . . . . . . . . . . . . . . | 10 |
| B. | Termination of Non-Tenured Appointments . . . . . . . . . . . . . . . | 10 |
| 1. | Notice of Nonrenewal of Appointment . . . . . . . . . . . . . . . . . | 10 |

2.   Notice by Member of Termination
      or Declination of Renewal  . . . . . . .      10
3.   Dismissal and Late Notice  . . . . . . .      11
C.   Termination of Tenure  . . . . . . . . . .      11
1.   Adequate Cause  . . . . . . . . . . . . . . .      11
2.   Termination of Program . . . . . . . . .      11
3.   Extraordinary Financial Exigency . . .      12
4.   Obligations of the University  . . . . .      12
VI.   **Leave** . . . . . . . . . . . . . . . . . . . . . . . .      12
VII.   **Retirement**  . . . . . . . . . . . . . . . . . .      14
VIII.   **Retirement Annuity** . . . . . . . . . . . .      15
IX.   **Faculty Role in University
      Decision Making** . . . . . . . . . . . . . . . .      15
X.   **Rights, Privileges, and Resolution of
      Disputes Under This Code**  . . . . . . .      16
A.   Rights and Privileges Under
      This Code  . . . . . . . . . . . . . . . . . . .      16
B.   Grievances . . . . . . . . . . . . . . . . . . . .      16
XI.   **Health Service**  . . . . . . . . . . . . . . . .      17
XII.   **Construction**  . . . . . . . . . . . . . . . . .      17
XIII.   **Effective Date** . . . . . . . . . . . . . . . .      17
      **Procedures for the Implementation
      of the Faculty Code**  . . . . . . . . . . . .      18
A.   Governance of Departments
      and Schools . . . . . . . . . . . . . . . . . . . .      18
B.   Faculty Participation in Action
      Concerning Faculty Membership  . . .      18
C.   Faculty Consultation and
      Recommendation in the Selection
      and Continuance of Academic
      Administrative Officers . . . . . . . . . .      20
1.   Department Chairs . . . . . . . . . . . . . .      20
2.   Deans, Associate Deans, Assistant
      Dean, and Similar Academic
      Administrative Officers . . . . . . . . . .      20
3.   Vice President for Academic Affairs,
      Associate or Assistant Vice Presidents
      for Academic Affairs . . . . . . . . . . . .      22
4.   Other Administrative Officers  . . . .      22
5.   President of the University . . . . . . .      22
D.   Faculty Participation in Action
      Concerning Curriculum . . . . . . . . .      23

E.   Procedures for Implementation of
      Article X of the Faculty Code . . . . .      24
1.   Informal Resolution  . . . . . . . . . . . .      24
2.   Dispute Resolution Committee  . . .      24
3.   Preliminary Proceedings . . . . . . . . .      24
4.   Formal Proceedings  . . . . . . . . . . . .      25
a)   Commencement of Proceedings  . . .      25
b)   Hearing Committee and
      Hearing Officer . . . . . . . . . . . . . . . .      26
c)   Procedure for Hearings  . . . . . . . . .      28
5.   Appeals  . . . . . . . . . . . . . . . . . . . . . .      30
6.   Recommendations  . . . . . . . . . . . . .      30
7.   Final Disposition  . . . . . . . . . . . . . .      31
F.   Procedures for the Dismissal of a
      Faculty Member for Adequate
      Cause . . . . . . . . . . . . . . . . . . . . . . . .      31
1.   Commencement of
      Proceedings . . . . . . . . . . . . . . . . . . .      31
2.   Hearing Committee  . . . . . . . . . . . .      32
3.   Procedure for Hearings  . . . . . . . . .      33
4.   Appeals  . . . . . . . . . . . . . . . . . . . . . .      33
5.   Attorneys' Fees and Expenses  . . . . . .      33

# Faculty Code
# Governing the Academic
# Personnel of the University

The Board of Trustees of The George Washington University, by virtue of the authority vested in it by the University Charter, hereby establishes the following Faculty Code. The Faculty Code applies to all University faculty in all colleges, schools, departments, and comparable educational divisions. Constitutions, by-laws, and established procedures of governance devised by subdivisions of the University are subordinate to the letter and spirit of the Faculty Code.

## I. GRADES OF ACADEMIC PERSONNEL

The grades of academic personnel are:

### A. Retired Status

University professor emeritus, professor emeritus, professor emeritus in residence, associate professor emeritus, associate professor emeritus in residence, and retired (in any given rank for age or disability).

### B. Active Status

**1. Regular:** University professor, professor, associate professor, assistant professor, and instructor. Each of the regular, active-status ranks may be tenure-accruing or non-tenure-accruing as specified in the original letter of appointment. However, the proportion of regular, active-status faculty serving in non-tenure-accruing appointments shall not exceed 25 percent in any school, nor shall any department have fewer than 50 percent of its regular, active-status faculty appointments either tenured or tenure-accruing. The foregoing shall not apply to the Medical Center faculty who are stationed at affiliated institutions, nor to the faculties of the Law School or of the College of Professional Studies.

**2. Limited Service:** Adjunct professor, adjunct associate professor, adjunct assistant professor, adjunct instructor, clinical professor, professorial lecturer, associate clinical professor, associate professorial lecturer, assistant clinical professor, assistant professorial lecturer, clinical instructor, lecturer, studio instructor, special lecturer, fellow, teaching fellow, and graduate teaching assistant.

**3. Visiting:** Visiting professor, visiting associate professor, visiting assistant professor, and visiting instructor.

**4. Research Staff:** Members of the research staff may be appointed, upon recommendation of the appropriate faculty and officers of the administration, as research professor, associate research professor, assistant research professor, and research instructor. Such appointments do not provide tenure.

## II. ACADEMIC FREEDOM

A. A faculty member shall enjoy freedom of investigation subject only to legal restrictions and such guidelines as shall be recommended by the Faculty Senate and adopted by the University.

B. A faculty member shall enjoy freedom of expression. In the classroom, a faculty member's exposition shall be guided by requirements of effective teaching, adherence to scholarly standards, and encouragement of freedom of inquiry among students. In speaking and writing outside the University, a faculty member shall not attribute his or her personal views to the University.

## III. PROFESSIONAL RESPONSIBILITIES

A. Members of the faculty shall perform well their academic duties, strive for professional development, and apply their talents to the service of their professions and their community.

B. Members of the faculty are responsible for maintaining standards of professional ethics and for the fulfillment of faculty responsibilities.

C. Members of the faculty shall not permit their research to interfere with their teaching duties. In the classroom, they shall be responsible for the character of the instruction, the maintenance of good order, and the observance of University regulations. Faculty members shall make adequate preparation for their classes and conduct them in a dignified, courteous manner. They shall meet classes on time, hold classes for the full period, evaluate academic performance fairly and reasonably and report evaluations promptly, and report promptly to the appropriate dean matters requiring disciplinary action and matters relating to the physical condition of classrooms and laboratories. If a student alleges an instance of arbitrary or capricious academic evaluation, the allegation shall be heard and reviewed through orderly faculty peer review procedures established by the dean and faculty of the school in which the contested academic evaluation takes place; should such peer review processes find in favor of and uphold the complaint of the student, yet the faculty member persists in refusing to alter the academic evaluation at issue, the Dean's Council and dean shall afford the student an appropriate remedy after consultation with the peer review body.

D. Members of the faculty shall perform their other academic duties conscientiously; they shall attend faculty meetings, commencement exercises, convocations, and other academic events; serve on faculty or University committees; assist in the administrative work of their departments and in the general administrative work of the University; and serve as general or departmental advisers to students.

E. Members of the active-status faculty shall strive to grow in professional competence by means of effective teaching and sound scholarship. They shall strive for the advancement of knowledge in their fields by individual research and by participation in the activities of professional societies.

F. Regular, active-status members of the faculty shall have the primary responsibility of devoting their time, thought, and energy to the service of the University. No such member of the faculty shall accept an outside teaching appointment during the academic year or engage in any other regular activity of a remunerative nature without the approval of the University. Even when officially approved, such employment shall not be permitted to interfere with a faculty member's responsibility to the University.

## IV. APPOINTMENT, REAPPOINTMENT, PROMOTION, AND TENURE

### A. Appointment

#### 1. Statements of Terms and Conditions

a) New faculty appointments shall be made by a letter signed by the appropriate corporate officer of the University. The appointee may accept the appointment by signing a copy of the letter of appointment and returning it to the University. A copy of this Code shall accompany or precede the letter of appointment and shall be considered part of the agreement between the faculty member and the University.

b) Tenured members of the faculty and faculty members (except those appointed in the Medical Center) whose appointments do not expire or whose appointments will be renewed shall be notified in writing annually, on or about May 15, of changes in rank or of other terms and conditions of service for the next academic year and further shall be notified annually in writing of changes in salary, no later than November 1.

#### 2. Limited Service Appointments

All appointments to limited service active status (as defined in Article I, Section B, Paragraph 2) shall be for a specified period of a year or less. Such appointments may be renewed an unlimited number of times.

### 3.1 Regular Tenure-Accruing Appointments

a) All appointments or reappointments to regular, active-status positions shall be for a specified term except for those that confer tenure.

b) The total of such terms, including all full-time service at the rank of instructor or higher in this or other recognized institutions of higher learning, shall not exceed seven years. The following provisions apply:

1) A faculty member with more than three years' previous full-time service at another institution may be appointed at any rank below that of professor without tenure for four years as a term or condition of his or her initial appointment, even though his or her total period of service in the academic profession is thereby extended beyond seven years.

2) Leaves of absence to engage in authorized teaching or research activities at another institution shall be included in this seven-year period.

3) Leaves for study toward a degree, leaves for military or for personal reasons, and defense leave shall not be included in this period. A partial leave for family or medically related purposes of sufficient duration may justify an appropriate partial extension of the probationary period.

c) A faculty member of the rank of assistant professor or higher who will not be granted tenure at the end of the final year of his or her maximum term of appointment shall be so notified in writing no later than June 30 preceding the year in which his or her appointment will expire. However, notwithstanding any other provision of Articles IV and V of the Faculty Code, if a decision on tenure has not become final by such June 30 deadline due to a failure to resolve an administrative nonconcurrence with a faculty recommendation, the June 30 deadline may be extended for up to 60 days, provided the appropriate administrative officer has given written notice of such extension to the faculty member no later than the original June 30 deadline. A faculty member who does not receive notice of denial of tenure

by the date required under the preceding two sentences shall not be granted tenure at the end of his or her pending term of appointment, but instead shall be granted a one-year extension of such term. If not notified by June 30 of the final year of the non-extended term of appointment that tenure will not be granted, he or she will acquire tenure at the end of the extended term.

### 3.2 Regular Non-Tenure-Accruing Appointments

a) Letters of appointment to positions that will not normally lead to the consideration of the appointee for tenure shall include a statement to that effect.

b) Members of the faculty who are stationed at affiliated institutions and assigned to educational programs of the Medical Center and who have been appointed to regular, active-status positions without tenure prior to the effective date of this Code may continue to be appointed without tenure.

### 4.1 Stated Periods by Rank for Regular Tenure-Accruing Appointments

a) Instructors
Instructors shall be appointed for an initial period of one year and may be reappointed for not more than three additional one-year periods. No reappointments shall, except by special action of the Board of Trustees upon recommendation by the appropriate faculty body and the appropriate officers of administration, extend any individual's total period as an instructor beyond four years. Tenure shall not be conferred at this grade.

b) Assistant Professors
Assistant Professors may be appointed for a period of not more than three years and may be reappointed, with or without tenure, for one or more additional periods.

c) Associate Professors
Associate Professors may be appointed with tenure or for a period of not more than four years without tenure, and may be reappointed, with or without tenure, for one or more additional periods.

d) Professors
Professors may be appointed with tenure or for a period of not more than three years without tenure.

e) University Professors
University Professors shall be appointed with tenure. The process of making such appointments shall be as follows:

1) The candidate shall be recommended by one or more departments or schools; and

2) The candidate shall be recommended by the Executive Committee of the Faculty Senate and/or by a faculty committee appointed by the President; and

3) The candidate shall be recommended by the Vice President for Academic Affairs and by the President, the appointment to be approved by the Board of Trustees.

### 4.2 Stated Periods by Rank for Regular Non-Tenure-Accruing Appointments

Faculty members with regular, non-tenure-accruing appointments at any rank may be reappointed to the same rank or to a higher one as many times as the needs of the University may require.

### 5. Criteria and Procedures for Appointments

Each school shall establish and publish criteria on which regular faculty appointments will be based. Additional criteria that may exist in the departments shall also be published. Each department or nondepartmentalized school shall establish and publish the procedures to be followed for recruitment, assembling all relevant information, and making recommendations for appointments to the regular faculty.

### B. Promotion

1. Promotion shall be dependent upon professional competence as evidenced by teaching ability, productive scholarship, participation and leadership in professional societies, service to the University, and public service.

2. As general practice, a promotion shall be accompanied by an appropriate increase in salary.

3. Each school or comparable educational division shall establish and publish criteria on which promotion will be based. Additional criteria that may exist in departments shall also be published. Each department or nondepartmentalized school shall establish and publish the procedures followed for making decisions concerning promotions.

4. Each department or school shall establish procedures for periodically informing faculty members whether they are making satisfactory progress toward promotion.

## C. Tenure

1. Tenure shall be dependent upon professional competence as evidenced by teaching ability, productive scholarship, participation and leadership in professional societies, service to the University, and public service. Upon a specific showing that the academic needs of the University have changed with respect to a particular position, that factor may also be considered in determining whether tenure shall be granted.

2. Each school or comparable educational division shall establish and publish criteria on which the granting of tenure will be based to implement the factors itemized in Paragraph 1. Such criteria shall be stated separately from the criteria for promotion. Any additional criteria for tenure that may exist in departments shall also be published. Each department or nondepartmentalized school shall establish and publish the procedures followed for making decisions concerning tenure.

3. To aid faculty members in assessing their potential for achieving tenure, each department, division, or comparable program shall establish procedures for informing individual faculty members, upon request, concerning probable status with regard to tenure. Such information will not constitute a commitment to recommend tenure.

## D. School-Wide Personnel Committees

To implement the procedures required in Sections B.3 and C.2 above, each school shall establish a school-wide personnel committee, either as an elected standing committee or of the school faculty acting as a committee of the whole, to consider recommendations for appointments with tenure, for promotion, or for tenure of regular full-time faculty. Such committees may request additional information, documentation, or clarification respecting such recommendations. Further:

1. An elected standing committee, sitting in review of recommendations originating from a department or equivalent unit, shall advise the dean of that school whether the candidate has met the relevant school and department criteria and whether it has identified any "compelling reasons" that may exist for not following the departmental or unit recommendation. Such advisories shall not be construed as "faculty recommendations" as defined by Section B.3 of the Procedures for Implementation of the Faculty Code.

2. When the faculty of a school, sitting as a committee of the whole, serves as the school's personnel committee and initiates recommendations to the dean for appointments and actions affecting renewal of appointments, promotion, tenure designation, and termination of service, such recommendations shall be construed as "faculty recommendations" in the sense of the Procedures, Section B.3.

3. In the College of Professional Studies, the Dean's Council shall take the place of the elected standing committee or committee of the whole described in this Part D.

## E. Nondiscrimination

Appointments, renewals, terminations, promotions, tenure, compensation, and all other terms and conditions of employment shall be made solely on the basis of merit and without regard to race, color, religion, sex, sexual orientation, national origin, or other considerations prohibited by law.

# V. TERMINATION OF SERVICE

## A. Expiration of Definite-Period Appointments

All appointments for a definite period of service expire automatically with the completion of such period of service, subject, as appropriate, to the safeguards specified in this Article and in Article IV.

## B. Termination of Non-Tenured Appointments

### 1. Notice of Nonrenewal of Appointment

Written notice that an appointment is not to be renewed shall be given to a regular, active-status faculty member in advance of the expiration of his or her appointment, according to the following minimum periods of notice:

a) Not later than March 1 of the first academic year of faculty service in the University in the case of a one-year appointment;

b) Not later than December 1 of the second academic year of such service in the case of a two-year appointment or the renewal of a one-year appointment;

c) Not later than June 30 preceding the final academic year after two or more academic years of service in the University.

### 2. Notice by Member of Termination or Declination of Renewal

A member of the faculty who desires to terminate an existing appointment or to decline a renewal shall give notice in writing no later than April 1 if the faculty member's rank is instructor or assistant professor, and no later than March 1 if the rank is higher, or within thirty days after receiving notice of the terms and conditions of service for the next academic year, whichever date is later; but the faculty member may properly request a waiver of this requirement in case of hardship or in a situation that might entail the denial of substantial professional advancement.

### 3. Dismissal and Late Notice

Dismissal of a faculty member during a non-tenured appointment, or the nonrenewal of such an appointment with less than the required advance notice, shall be preceded by a statement of reasons and shall be subject to the provisions of Article X of this Code.

## C. Termination of Tenure

Grounds for termination: Until retirement of a faculty member in accordance with other provisions of this Code, and subject to the provisions of Article X, an appointment with tenure shall be terminable by the University only for adequate cause, termination of program, or on account of extraordinary financial exigency, in the latter two cases after not less than twelve months' notice to the faculty member.

### 1. Adequate Cause

Adequate cause shall mean unfitness to perform academic duties because of:

a) incompetence;

b) lack of scholarly integrity;

c) persistent neglect of professional responsibilities under this Code; or

d) gross personal misconduct that destroys academic usefulness.

### 2. Termination of Program

The University may be required to terminate the appointments of tenured faculty members as a result of the termination of an entire instructional program because of a substantial decline in enrollment in the program or because of the expiration of grants, contracts, or other sources of funding on which the program's financial viability depends.

### 3. Extraordinary Financial Exigency

The University may be required to terminate the appointments of tenured faculty members because of extraordinary financial exigency. This drastic measure shall be considered only as a last resort, after every effort has been made by the University administration and the Board of Trustees to meet the need in other ways.

### 4. Obligations of the University

a) Tenured faculty members shall not be dismissed because of termination of their program or extraordinary financial exigency until every effort has been made to place them in suitable positions elsewhere in the University.

b) If an appointment with tenure is terminated because of termination of a program or an extraordinary financial exigency, and, within two years, the program is reinstituted or funds become available to restore the position, the released faculty member's place shall not be filled until he or she has been offered and declined reappointment.

c) Faculty members whose tenured appointments are terminated because of the termination of their program or because of an extraordinary financial exigency shall be provided severance payment of one year's salary beyond the date of termination of employment.

### VI. LEAVE

A. When circumstances permit, for study or for any other valid reason, a leave of absence without salary, or a partial leave for family or medically related purposes with reduced salary, may be granted to a member of the faculty on approval of the department or other appropriate unit (if applicable), the appropriate dean(s), and the Vice President for Academic Affairs. Except for unpaid leaves of absence taken under the Family and Medical Leave Acts, unpaid leaves shall not normally exceed two consecutive academic years, although under unusual circumstances additional unpaid leave may be granted.

B. When circumstances permit, the Board of Trustees shall grant sabbatical leave to a member of the faculty who has served six or more continuous years in a college or university in regular active status, three years of which must have been served in this University, or who has served six or more years in regular active status after a preceding grant of sabbatical leave. The request for sabbatical leave must be accompanied by an outline of the education, research, and/or self-improvement program the applicant proposes to follow if the leave is granted. Such leave must be recommended by the department or other appropriate unit, concurred in by the appropriate administrative official of the corresponding school and the Vice President for Academic Affairs, approved by the President of the University, and granted by the Board of Trustees of the University. By accepting a grant of sabbatical leave, faculty members obligate themselves to continue in the service of the University for at least one year following their leave unless the University agrees to some other arrangement. When faculty members are eligible for sabbatical leave, but for reasons of school or departmental convenience or necessity have their leave deferred, their next eligibility for sabbatical leave shall be computed from the time they became eligible for such leave, not from the date the leave was actually granted. The University shall pay members of the faculty while on sabbatical leave 60% of their salary for two semesters or all of their salary for one semester. (The salary is paid as a compensation for the benefits received by the University from the efforts of the faculty member on leave.)

C. In the event of a national emergency, regular, active-status faculty members will be granted defense leave in accordance with the following provisions:

1. Members of the faculty given defense leave for the duration of an emergency will have the privilege of returning to the service of the University at the beginning of the semester following their release from service.

12

13

2. Members of the faculty on defense leave in a civilian status may be requested to return to the University and their defense leave terminated on sixty days' notice.

3. The return to University service of members of the faculty from defense leave is conditioned upon their mental, moral, and physical competence to resume their positions in the University.

## VII. RETIREMENT

A. Subject to the needs of the University, a full-time member of the faculty who is fully retired may be invited by the appropriate officers of the University to continue on a part-time basis and appointed for a renewable period not to exceed one academic year. Such appointee shall be designated "emeritus (or retired) in residence."

B. A member of the faculty with long and distinguished service to the University may, upon retirement, be awarded emeritus status. Emeritus status is recommended by the regular, active-status members of the faculty concerned and, with the concurrence of the administration, is awarded by the Board of Trustees. Those eligible for consideration for emeritus status are University professors, professors, adjunct professors, clinical professors, research professors, associate professors, and associate clinical professors. Faculty members in emeritus status shall be entitled to use facilities as arranged with the administration of the University and to participate in faculty meetings without the right to vote. They may serve on committees and may perform such other services as are in keeping with their desires and with the needs of the University.

C. A retired faculty member may use facilities as arranged with the administration of the University and participate in faculty meetings without the right to vote.

D. Subject to programmatic needs, full-time tenured members of the faculty with ten years of continuous full-time service who are above 60 years of age may elect to continue for a mutually agreed period on a half-time or two-thirds-time regular, active-status basis. Benefits and conditions of this reduced service will be as specified in the Faculty Handbook at the time the election is made to retire partially.

## VIII. RETIREMENT ANNUITY

The retirement plan for faculty and staff is a defined contribution plan with investment options provided under agreements with TIAA and other carriers. Full-time and regular part-time members of the faculty (as defined in the Faculty Handbook) and those continuing in reduced service under the provisions of Article VII, Section D, are eligible to participate.

## IX. FACULTY ROLE IN UNIVERSITY DECISION MAKING

A. The regular, active-status faculty shares with the officers of administration the responsibility for effective operation of the departments and schools and the University as a whole. In the exercise of this responsibility, the regular, active-status faculty plays a role in decisions on the appointment and promotion of members of the faculty and the appointment of the President, deans, departmental chairs, and other administrative officials with authority over academic matters. The regular, active-status faculty also participates in the formulation of policy and planning decisions affecting the quality of education and life at the University. This participation includes an active role in the development, revision, or elimination of curricular offerings of each department or school. The regular, active-status members of the faculty of a school are also entitled to an opportunity to make recommendations on proposals concerning the creation, consolidation, or elimination of departments, institutes, or other academic or research units making up a part of that school. The Faculty Senate or an appropriate committee thereof is entitled to an opportunity to make recommendations on proposals

concerning the creation, consolidation, or elimination of schools or other major components of the University.

B. The faculty cannot perform an effective and responsible role in University decision making without the cooperation of the administrative officers of the University. This cooperation includes the provision of such information as is necessary to the development of sound, well-informed recommendations. Faculty bodies charged with responsibilities for particular policy and planning areas are entitled, to the extent feasible, to be informed sufficiently in advance of important decisions within their areas of competence to be able to provide their advice or recommendations to the appropriate University officials.

## X. RIGHTS, PRIVILEGES, AND RESOLUTION OF DISPUTES UNDER THIS CODE

### A. Rights and Privileges Under This Code

The rights, privileges, and responsibilities of a faculty member, as conferred by this Code, shall be carefully safeguarded in accordance with the highest accepted principles, practices, and procedures of the academic community. An alleged infringement of such rights or privileges or an alleged violation of such responsibilities shall first be considered by the faculty member or members concerned, or by appropriate representatives of the faculty, in cooperation with the responsible administrative officers. If such consideration does not lead to an adjustment satisfactory to the parties involved, the procedures for the implementation of this Article shall be fully utilized.

### B. Grievances

To maintain a grievance, the complaining party must allege that he or she has suffered a substantial injury resulting from violation of rights or privileges concerning academic freedom, research or other scholarly activities, tenure, promotion, re-

appointment, dismissal, or sabbatical or other leave, arising from:

1. Acts of discrimination prohibited by federal or local law;

2. Failure to comply with the Faculty Code, or Faculty Handbook, or other rules, regulations, and procedures established by the University;

3. Arbitrary and capricious actions on behalf of the University, or arbitrary and capricious applications of federal or local statutes and regulations; or

4. Retaliation for exercise of Code-protected rights.

## XI. HEALTH SERVICE

A. The University, recognizing the importance of the health of the teacher to professional competence, shall contribute to the cost of the current and any future basic health care program for all members of the faculty.

B. The facilities of the Emergency Room are available to members of the faculty in emergencies resulting from accidents or sudden, serious illness while on campus.

## XII. CONSTRUCTION

As used in this Code and the Procedures for Implementation, words that may imply the masculine gender shall be construed to refer to both the masculine and the feminine genders.

## XIII. EFFECTIVE DATE

Having been approved by the Board of Trustees of the University on February 28, 2003, this Code shall, as of that date, supersede all former codes and ordinances. The Board of Trustees of the University directs that this revised Faculty Code be published.

# Procedures for the Implementation of the Faculty Code

## A. Governance of Departments and Schools*

The regular, active-status faculty and tenured limited service faculty of each department, school, or comparable educational division shall establish written procedures for the governance of that unit.

## B. Faculty Participation in Action Concerning Faculty Membership

1. The regular, active-status faculty of each school or comparable educational division shall establish procedures enabling an elected standing committee or committee of the whole to submit its recommendations on the allocation of regular-service, tenure-accruing appointments within that unit.

2. The regular, active-status faculty of the rank of assistant professor or higher of a department or of a nondepartmentalized school or comparable educational division shall, subject to such limitations or guidelines as may be established by the faculties of the respective schools, establish procedures enabling an elected standing committee or a committee of the whole to submit its recommendations for appointments. Recommendations for actions other than appointments concerning instructors, assistant professors, or associate professors shall be determined by the tenured members of the faculty of higher rank or of equal and higher rank, as the faculty may have determined by previously established procedures. Recommendations for actions other than appointments concerning professors shall be determined by tenured members of the rank of professor. In the College of Professional

Studies, the Dean's Council shall take the place of the elected standing committee or committee of the whole described in this paragraph 2.

3. Appointments and actions affecting renewal of appointments, promotion, tenure designation, and termination of service shall normally follow faculty recommendations. Departures from this standard shall be limited to those cases involving compelling reasons. The appropriate administrative officer shall notify the Executive Committee of the Faculty Senate of any departures from faculty recommendations and the compelling reasons therefor. The faculty or the appropriate unit thereof shall also be notified unless the Board of Trustees determines that such notification would be contrary to the best interest of the individual or individuals concerned.

4. Faculty recommendations concurred in by the appropriate administrative officers shall be transmitted by them to the President, who shall transmit them to the Board of Trustees. Variant or nonconcurring recommendations from an administrative officer, together with supporting reasons, shall be sent by that officer to the Executive Committee of the Faculty Senate through the appropriate superior administrative officers. The Executive Committee may seek information and advice and make recommendations to the faculty or the appropriate unit thereof and to the appropriate administrative officers. If concurrence cannot be obtained after opportunity for reconsideration in the light of the recommendations of the Executive Committee, the recommendations of the appropriate administrative officers, accompanied by the recommendation of the faculty and the report of the Executive Committee, shall be transmitted to the Board of Trustees through the President, except that, at its discretion, the originating faculty unit may instead elect to leave the decision to the President.

---

* In the governance of the Medical Center, all faculty eligible for membership in the Medical Center Faculty Assembly shall be eligible to participate whenever the term "regular" faculty appears in this document.

## C. Faculty Consultation and Recommendation in the Selection and Continuance of Academic Administrative Officers

### 1. Department Chairs

The regular, active-status faculty members of a department of the rank of assistant professor and higher shall, subject to such limitations or guidelines as may be established by the faculties of the respective schools, formulate procedures for making recommendations for filling vacancies in the post of department chair. The procedures shall provide for an elected committee of the regular, active-status members of the department, or an appropriate interdepartmental committee, to recommend a candidate for the position. Normally, the appointment shall be made in accordance with the recommendation. Should the appointing official not concur with the committee's recommendation, that official shall so inform the department concerned and shall indicate the reasons therefor. The committee shall, after consultation with the appointing official, make alternative recommendations until a nomination acceptable to both the department and the appointing official is reached.

### 2. Deans, Associate Deans, Assistant Deans, and Similar Academic Administrative Officers

a) The academic administrative officers, such as deans, associate deans, assistant deans, Vice President for Health Affairs, or other academic administrative officers of similar rank of a school or other academic unit shall be qualified for faculty membership by training and experience.

b) Appointments to such positions shall be made only after a special or standing committee, elected by the regular, active-status faculty involved from among the faculty's tenured members, has established criteria (subject to the approval of that faculty as a whole), considered nominations, and reported its recommendations in accordance with the procedures established under Section A, above, to the faculty that elected it or to the appropriate academic

administrative officer. In the College of Professional Studies, the special faculty committee performing this function shall be appointed jointly by the Vice President for Academic Affairs and the deans of the schools whose programs are most directly affected by the College of Professional Studies.

c) Such appointees shall hold office only as long as they retain the confidence of the faculty concerned. A formal proceeding to question the continued confidence of the faculty of a school in an academic administrative officer shall be instituted only after faculty members have made a reasonable effort to bring the substance of their concerns to the attention of such officers informally. The formal proceeding shall be conducted as follows:

1) A petition signed by one-third of the regular, active-status members of the rank of assistant professor or higher of the faculty concerned shall be submitted to the Chair of the Executive Committee of the Faculty Senate.

2) The Chair of the Executive Committee shall call a special meeting of the faculty concerned for consideration of the matter. The meeting shall be held within twenty days (on which classes are regularly held in the University) of the time the petition is submitted. Notice of the meeting shall be given to all of the faculty members eligible to vote on the matter.

3) The Chair of the Executive Committee shall preside over the meeting. At this meeting, procedures for balloting shall be determined.

4) Within ten days (on which classes are regularly held in the University) of the first special meeting, a secret ballot of the regular, active-status faculty of the rank of assistant professor or higher shall be taken at a special meeting or by mail on the question of confidence in the administrator involved. The balloting shall be supervised by the Executive Committee of the Faculty Senate.

5) The affirmative vote of a majority of faculty members eligible to vote shall be necessary for the passage of a vote of no confidence. If the resolution

passes, the Chair of the Executive Committee shall forward the results of the proceedings to the President of the University for appropriate action.

### 3. Vice President for Academic Affairs, Associate or Assistant Vice Presidents for Academic Affairs

Appointments to the position of Vice President for Academic Affairs or Associate or Assistant Vice President for Academic Affairs shall be made only after consultation with the Executive Committee of the Faculty Senate. The Executive Committee may submit names of proposed candidates for these positions and may advise concerning names proposed by administrative officers. Appointees to these positions shall be qualified for faculty membership by training, experience, and continued interest in teaching and research. They shall retain office only as long as they retain the confidence of the Faculty Assembly.

### 4. Other Administrative Officers

a) The faculty of a school, division, or other organizational unit or group of units shall be consulted for its recommendations regarding the appointment of administrative officers whose concern with academic matters is limited to that unit or group of units. The regular, active-status faculty members of the rank of assistant professor and higher of the organizational unit or units concerned shall establish procedures and criteria for the formulation of such recommendations.

b) The Executive Committee of the Faculty Senate shall be consulted for its recommendations regarding the appointment of administrative officers whose concern with academic matters comprehends all or substantially all of the University.

### 5. President of the University

The Faculty Assembly shall elect a committee to advise and consult with the Board of Trustees or appropriate members thereof in the selection of a President.

### D. Faculty Participation in Action Concerning Curriculum

1. The regular, active-status faculty members of the rank of assistant professor and higher of each school shall establish procedures for their participation, directly or through elected standing committees, in decisions relating to the addition, revision, or elimination of curricular offerings. In the College of Professional Studies, the Dean's Council shall establish procedures for faculty participation in such decisions.

2. At least half of the members of the Dean's Council of the College of Professional Studies shall be tenured faculty members of the schools affected most directly by the College, and those members of the Dean's Council shall be elected by the faculties of their respective schools.

3. The College of Professional Studies shall not initiate a degree program that duplicates a degree program offered by another school. The College shall not initiate a degree program that overlaps substantially with a degree program offered by another school, unless (a) the Dean's Council of the College has approved that program, and (b) the appropriate corporate officer of the University has authorized the College to initiate that program after consulting with the faculty of the other school.

4. The College of Professional Studies shall not confer any degree that duplicates a degree offered by another school. Each degree conferred by the College (whether at the associate's, bachelor's, or master's level) shall carry the designation "of Professional Studies."

5. Prior to the end of each academic year, the Dean's Council of the College of Professional Studies shall submit a written report to the Faculty Senate. Each annual report shall describe the procedures established and other actions taken by the Dean's Council to: (a) facilitate faculty participation in the appointment and promotion of faculty members and in decisions relating to the addition, revision or elimination of curricular offerings of the College;

and (b) address issues arising out of potential substantial overlaps between degree programs offered or proposed to be offered by the College and degree programs offered by other schools.

### E. Procedures for Implementation of Article X of the Faculty Code

#### 1. Informal Resolution

Before instituting a formal grievance, the aggrieved party shall make all reasonable efforts to achieve a resolution of the situation through informal consultation with the appropriate faculty members and administrative officers.

#### 2. Dispute Resolution Committee

The Faculty Senate shall elect a Dispute Resolution Committee of fifteen tenured, active-status faculty members, no more than three of whom shall be members of the faculty of any one school (except that four may be members of the faculty of Columbian College and four may be members of the Law School) and none of whom may be serving as academic administrators. The members of the Committee shall serve three-year staggered terms so that the terms of five of the members shall expire each year. The Faculty Senate shall designate the Chair of the Committee from among the members of the Committee. Alternate temporary members may be appointed at any time by the Executive Committee to facilitate the dispute resolution procedures.

#### 3. Preliminary Proceedings

If informal consultation fails to resolve the matter or if the aggrieved party concludes that such consultation is not feasible or would be futile, the aggrieved party shall refer the dispute to the Dispute Resolution Committee by means of a letter addressed to the Chair with copies sent to the Chair of the Executive Committee of the Faculty Senate and to the Vice President for Academic Affairs on behalf of the University. The letter shall identify the general nature and circumstances of the dispute. Unless either the University or the aggrieved party

objects, the Chair of the Dispute Resolution Committee shall promptly appoint a special mediator of appropriate qualifications to assist the University and the aggrieved party to resolve the dispute. The special mediator shall report to the Chair of the Dispute Resolution Committee that a mutually satisfactory solution has been achieved, in which case the grievance shall be dismissed, or that efforts at mediation were unsuccessful.

#### 4. Formal Proceedings

a) Commencement of Proceedings

1) If either party declines to mediate or to continue to mediate, or if efforts at mediation are unsuccessful, the aggrieved party may commence formal proceedings by means of a grievance sent to the Chair of the Dispute Resolution Committee, with copies sent to the Chair of the Executive Committee of the Faculty Senate and to the Vice President for Academic Affairs on behalf of the University.

2) The grievance shall identify the aggrieved party as the "Grievant" and shall name The George Washington University as the "Respondent." A grievance may not be brought against faculty members of the University, acting in their individual capacities as faculty members. Consistent with Article X.B., a grievance may only be maintained against the University for official acts. The Vice President for Academic Affairs shall identify the appropriate faculty member or administrative official who shall act on behalf of the University as Respondent.

3) The grievance shall set forth with particularity the nature of the dispute, specifying, consistent with Article X. B., the rights or privileges under the Faculty Code alleged to have been violated, the specific act or acts alleged to constitute the violation, and the remedy sought. The grievance shall also set forth the Grievant's efforts to resolve the dispute informally, or if no such efforts were made, the reasons for failing to make such efforts. No grievance may be maintained on the basis of error that did not affect the substantial rights of the Grievant.

4) Within twenty calendar days of receipt of the grievance the University shall reply in writing, sending copies of the reply to the Chair of the Dispute Resolution Committee, the Chair of the Executive Committee of the Faculty Senate, and the Grievant. The reply shall set forth with particularity the position of the University with respect to each allegation of the grievance.

b) Hearing Committee and Hearing Officer

1) Within a reasonably prompt period of time, ordinarily within ten calendar days of receipt of the grievance and reply, the Chair of the Dispute Resolution Committee shall appoint a Hearing Committee of three members from among the members of the Dispute Resolution Committee. The Chair of the Dispute Resolution Committee shall designate one member of the Hearing Committee to serve as the presiding Hearing Officer. The Hearing Officer shall have appropriate experience and training but need not be an attorney. The Hearing Officer, in addition to serving as a full member of the Hearing Committee, shall assure an orderly, expeditious, and relevant hearing, assure the development of a complete, fair, and reliable record, and advise the Hearing Committee as to issues of substance and procedure.

2) No member of the same department as the Grievant shall sit on the Hearing Committee. Any party to a dispute may disqualify one member of the Hearing Committee by peremptory challenge. Any party may also seek to disqualify any member of the Hearing Committee for cause. The Chair of the Dispute Resolution Committee shall decide any challenges for cause, based on written submissions from the parties. The Chair of the Dispute Resolution Committee shall, from among the remaining members of the Dispute Resolution Committee, fill any vacancies on the Hearing Committee created by challenges.

3) When all challenges have been decided and vacancies filled, and as soon as reasonably possible after receipt of the grievance and reply, the Hearing Officer shall convene the Hearing Committee to review the grievance. If a majority of the Hearing Committee, after an opportunity for argument by the parties, finds that the grievance does not allege facts sufficient to state a grievance under the Code, or that the grievance is based on evidence or allegations substantially the same as those that have previously been heard or decided, or that could have been presented in a previous hearing, the grievance shall be automatically referred to the Dispute Resolution Committee for consideration at the earliest reasonable time. If a majority of the Dispute Resolution Committee, after an opportunity for argument by the parties, agrees that for any of the reasons set out in this section a hearing is not warranted, the grievance shall be dismissed, in whole or in part, and the matters dismissed shall be deemed closed.

4) On the determination that a hearing is warranted, the Hearing Officer shall promptly convene the Hearing Committee, which shall establish a schedule for the hearing. Grievances shall be heard and decided with reasonable dispatch, and, ordinarily, shall be completed by the Hearing Committee within three months after the determination that a hearing is warranted. However, due consideration shall be given to the University's normal academic calendar.

5) Members of the Hearing Committee shall be present during the hearings and deliberations of the Committee, except that the presence during part of the proceedings of one of the two not serving as the Hearing Officer may be waived by agreement of the parties.

6) It shall be the duty of the Hearing Officer to convene promptly the meetings of the Hearing Committee and to preside; to assure the expeditious disposition of the case; to rule on all questions of procedure necessary to the conduct of the hearing, subject to being overridden by the other two members of the Hearing Committee; to control the development of testimony and of evidence in the record; to prepare or assign the writing of an opinion on behalf of the Hearing Committee; and to

advise the Hearing Committee in its deliberations on questions of substance and procedure. The Hearing Officer is a full member of the Hearing Committee, and the Hearing Committee shall decide all ultimate questions of fact, substance, procedure, or policy, by majority vote. The Hearing Officer shall sign dispositive orders on behalf of the Hearing Committee.

7) Members of the Hearing Committee, members of the Dispute Resolution Committee, and the parties shall avoid ex parte communications bearing on the substance of the dispute.

c) Procedure for Hearings

1) The parties to the proceedings shall be entitled to appear in person and to be represented by counsel or other adviser.

2) A grievance procedure is not a formal judicial proceeding. Its purpose is to provide a fair evaluation of an allegation that a right or privilege has been violated. In order to achieve that end, the Hearing Committee shall have authority to call any material witness who is a member of the University faculty, administration, or staff and any other person who is willing to testify; to question parties and witnesses; to exclude matters it deems irrelevant; to place reasonable limits on arguments, the presentation of evidence, and the questioning of witnesses by the parties. The University will make a reasonable effort to facilitate the appearance of all faculty, administration, and staff reasonably called to testify.

3) The procedure at the hearings shall be informal but shall comply with the requirements of fairness to the parties. The Hearing Committee is not required to comply with rules of evidence applicable in courts of law and may receive any relevant evidence that is not privileged. The Hearing Committee may decline to consider evidence when its probative value is outweighed by considerations of unfair prejudice, confusion of the issues, undue delay, waste of time, or needless presentation of cumulative evidence. The parties shall be entitled to testify on their own behalf; to call as material wit-

nesses any member of the University faculty, administration, or staff and any other person who is willing to testify; to present written and other evidence; and to cross-examine witnesses called by other parties. A party shall be entitled to inspect and copy, in advance of the hearing, all relevant documents in the control of the other party and not privileged and may offer such documents or excerpts therefrom in evidence.

4) The parties shall be entitled to present opening and closing statements.

5) A stenographic record or tape recording of the hearings shall be made and one copy, which shall be available to all parties, kept on file by the University.

6) The hearings shall be open to the public unless, on the motion of a party or the Hearing Committee, the Hearing Committee shall determine that it is in the best interest of the University and the parties that the hearings be closed.

7) At the conclusion of the presentation of evidence and argument from both sides, the Committee shall convene in closed session to deliberate and reach a decision. In rendering its decision, the Hearing Committee shall not substitute its judgment for that of the maker of the decision being challenged. Rather it shall determine whether the Grievant has established by clear and convincing evidence that he or she has suffered a substantial injury pursuant to Article X, Section B.

8) The Hearing Committee shall render its findings and recommendations in a written opinion that shall state the number of members subscribing to the opinion and shall include dissenting opinions, if any. This opinion shall be submitted to the Chair of the Dispute Resolution Committee, and copies shall be transmitted to the parties and to the Chair of the Executive Committee of the Faculty Senate.

9) The hearing procedures shall be concluded and the Hearing Committee's findings and recommendations shall be rendered as soon as practicable.

### 5. Appeals

a) Any party may appeal the findings and recommendations of the Hearing Committee by filing a notice of appeal with the Chair of the Dispute Resolution Committee and sending copies thereof to the Chair of the Executive Committee of the Faculty Senate and to the other parties. The notice of appeal must be filed within ten calendar days of the receipt of the decision of the Hearing Committee.

b) An appeal shall be heard by members of the Dispute Resolution Committee who were not members of the Hearing Committee, provided that members of the Dispute Resolution Committee who were disqualified from sitting as members of the Hearing Committee and members of the same department as the Grievant shall not participate in the hearings of the appeal. A quorum for hearing an appeal shall be two-thirds of those members of the Dispute Resolution Committee eligible under the terms of this section.

c) The parties to an appeal shall be entitled to present written and oral argument. However, evidence not introduced in the hearing may not be considered on appeal.

d) The Dispute Resolution Committee shall decide by majority vote and render an opinion in writing, sustaining, modifying, overruling, or remanding the decision of the Hearing Committee.

### 6. Recommendations

A Hearing Committee and the Dispute Resolution Committee may recommend that the University action being challenged be upheld, modified, reconsidered or remanded under specified conditions, or reversed, in whole or in part. A Hearing Committee and the Dispute Resolution Committee may not include as part of their recommendations any monetary damages, punitive damages, or any other actions or measures outside of the scope of the underlying University action being challenged.

### 7. Final Disposition

In the absence of a timely appeal filed by either party from a decision of a Hearing Committee, or after a decision of the Dispute Resolution Committee, such decision shall be transmitted to the parties, to the Chair of the Executive Committee of the Faculty Senate, and to the Vice President for Academic Affairs. The decision of the relevant Committee shall be deemed final and shall be implemented by the University unless the Vice President for Academic Affairs determines that there are compelling reasons not to implement the relevant Committee's decision. In the event of such a determination, the Vice President shall transmit his or her determination (including an explanation of such compelling reasons) and recommendation, and the record of the case, through the President of the University to the Board of Trustees, or, at the election of the Grievant, solely to the President, with copies to the Grievant and the Chairs of the Dispute Resolution Committee and the Executive Committee of the Faculty Senate, for a prompt decision of the President or the Board of Trustees.

### F. Procedures for the Dismissal of a Faculty Member for Adequate Cause

### 1. Commencement of Proceedings

a) Proceedings to dismiss a tenured faculty member for adequate cause may be commenced by a complaint, addressed to the Chair of the Dispute Resolution Committee, signed by the Vice President for Academic Affairs and either the dean or the department chair who has administrative responsibility for the faculty member concerned. The complaint shall set forth the grounds alleged to constitute adequate cause for dismissal. A copy of the complaint shall be delivered in hand to the faculty member concerned or shall be sent by registered mail to the faculty member's residence. A copy of the complaint shall also be sent to the Chair of the Executive Committee of the Faculty Senate.

b) Proceedings may also be commenced by a petition, setting forth the grounds alleged to constitute adequate cause for dismissal and signed by a majority of the tenured faculty of the school of the faculty member concerned, or by twenty tenured members of that faculty, whichever is the lesser. A copy of the executed petition shall be delivered in hand to the faculty member concerned or sent by registered mail to his or her residence. Copies shall also be sent to the Chair of the Dispute Resolution Committee, the Chair of the Executive Committee of the Faculty Senate, and the Vice President for Academic Affairs.

c) Within twenty calendar days of the receipt of the complaint, the faculty member concerned shall reply in writing, sending copies of the reply to the Chair of the Dispute Resolution Committee, the Chair of the Executive Committee of the Faculty Senate, and the Vice President for Academic Affairs. The reply shall set forth with particularity the responding faculty member's position with respect to each allegation of the complaint.

## 2. Hearing Committee

a) Upon receipt of the complaint, the Chair of the Dispute Resolution Committee shall, with the advice of the Executive Committee of the Faculty Senate, appoint a Hearing Committee of six members from among the members of the Dispute Resolution Committee.

b) No member of the same department as the faculty member concerned and no one who has signed a petition seeking that faculty member's dismissal shall sit on the Hearing Committee. The faculty member concerned may disqualify two members of the Hearing Committee by peremptory challenge and may also seek to disqualify a member of the Hearing Committee for cause. The Dispute Resolution Committee shall hear and decide any challenges for cause. The Chair of the Dispute Resolution Committee shall, from among the remaining members of the Dispute Resolution Committee, fill any vacancies on the Hearing Committee created by challenges.

c) When all challenges have been decided and vacancies filled, the Hearing Committee shall convene, establish a schedule for the hearings, and elect a chair from among its members to preside during the formal proceedings.

d) All of the members of the Hearing Committee shall be present during the hearings and deliberations of the Committee except that the presence of one of them during part of the proceedings may be waived by agreement of the parties.

## 3. Procedure for Hearings

The procedure for the hearings shall be the same as provided in Part E of these Procedures, except that the hearing shall be closed on the motion of the faculty member concerned, and that the Hearing Committee may recommend the dismissal of the faculty member concerned only by the affirmative vote of two-thirds of its members.

## 4. Appeals

The faculty member concerned may appeal the decision of the Hearing Committee in accordance with the procedures provided in Part E, Paragraph 5, of these Procedures.

## 5. Attorneys' Fees and Expenses

If a faculty member prevails against charges brought against him or her, the University may, upon recommendation of the Hearing Committee, reimburse the faculty member concerned for all or part of attorneys' fees and expenses actually incurred in his or her defense.

# INDEX

Academic Affairs, Vice President for
  Role in administrative appointments in the
    College of Professional Studies, 21
  Role in appointment of University Professors, 7
  Role in granting of leave, 12, 13
  Role in grievance cases, 24, 25, 31
  Role in procedure for dismissal of a faculty
    member for adequate cause, 31, 32
  Role of Executive Committee in appointment of, 22
Academic Freedom, 2, 16
Board of Trustees
  Consultation with faculty in the selection
    of a University president, 22
  Establishment of Faculty Code, 1
  Responsibility in extraordinary financial exigency, 12
  Role in appointment of University Professors, 7
  Role in approval of sabbatical leave, 13
  Role in awarding emeritus status, 14
  Role in extending reappointment of
    some instructors, 6
  Role in faculty grievances, 31
  Role in nonconcurrences, 19
Compelling Reasons
  As basis for administrative nonconcurrence
    with faculty recommendations, 19
  Standard for recommendations of school-wide
    personnel committees, 9
Dispute Resolution Committee
  Composition and role in grievance procedure, 24
Executive Committee of the Faculty Senate
  Role in appointing temporary members to
    facilitate dispute resolution process, 24
  Role in appointment of administrative officers, 22
  Role in appointment of University Professors, 7
  Role in grievance procedures, 25, 26, 30, 31
  Role in nonconcurrence procedure, 19
  Role in votes of no confidence, 21
Extraordinary Financial Exigency, 12
Faculty
  Active-status, 1, 4
  Appointments and reappointments, 4
  Criteria and procedures for faculty appointments, 7
  Dismissal and late notice, 11
  Dismissal for adequate cause, 31
  Grades of personnel, 1
  Leave, 5, 12
  Notice of nonrenewal of appointment, 10
  Professional responsibilities of the faculty, 2
  Promotion, 7

Retirement, 14
Retirement annuity, 15
Rights, privileges, and resolution of disputes
  under code, 16
Termination of service, 10
Termination of non-tenured appointments, 10
Faculty Assembly
  Role in selection of University president, 22
  (also see the Faculty Organization Plan)
Faculty Participation
  In action concerning curriculum, 23
  In actions concerning faculty membership, 18
  In governance of departments and schools, 18
  In the appointment and promotion of
    administrative officials with authority
    over academic matters (generally), 20
  In the selection of a University president, 22
  In the selection of certain administrative officers, 22
  In University decision making, 15
Governance of Departments and Schools, 15, 18
Grievance
  Appeals, 30
  Basis of, 16
  Dispute Resolution Committee, 24
  Final disposition, 31
  Formal proceedings, 25
  Hearing committee and Hearing Officer, 26
  Hearing procedures, 28
  Informal resolution, 24
  Preliminary proceedings, 24
  Recommendations, 30
Nonconcurrence with Faculty Recommendations
  (in tenure and promotion decisions), 19
Nondiscrimination, 9
Notice by Faculty Member of Termination or
  Declination of Renewal, 10
President of the University
  Faculty role in selection of, 22
  Role in appointment of University Professors, 7
  Role in approval of sabbatical leave, 13
  Role in grievance procedures, 31
  Role in nonconcurrences, 19
School-Wide Personnel Committees, 9
Tenure, 4, 8
Termination of Service, 10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBABRATA SAHA, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> GEORGE WASHINGTON UNIVERSITY, et al. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )     C.A. NO. 1:08-00087 RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

### ORDER

Upon consideration of Plaintiff Debabrata Saha's "Motion for entering Preliminary

Injunction" filed February 27, 2008 and the opposition of Defendants The George Washington

University, Mona E. Zaghloul, Wasyl Wasylkiwskyj, Edward Della Torre, Joan Schaffner and

Stephen Joel Trachtenberg, it is, by the Court, this ___ day of ____, 2008 hereby

ORDERED, that Plaintiff's "Motion for entering Preliminary Injunction" filed February 27,

2008 be and is DENIED.


_____

United States District Judge


cc:

Debabrata Saha, *pro se*
Douglas B. Mishkin, Esq.