United States District Court
For The District of Columbia

---

Debabrata Saha,

    Plaintiff,

v.

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

    Defendants.

Civil Action No. 1:08-cv-00087-RCL

---

**Plaintiff's Response to**
**Defendants' Opposition to Plaintiff's Fourth Motin for Preliminary Injunction Relief**

    On March 13, 2008 Defendants requested the Court for an unreasonable extension of time to oppose Plaintiff's Feb. 27, 2008 motion of Entering Preliminary Injunction. Court docket suggests that the Court did not grant the extension. In spite of no extension, Defendants filed their response anyhow on March 21, 2008. Under normal circumstances, Plaintiff would have been hesitant to respond, but since they brought an allegation of attempted wrong doing, Plaintiff submits this response to clear his name.

    In response to Defendants' opposition dated March 21, 2008, Plaintiff likes to submit the following.

(1) A Declaration of the Plaintiff denying Defendants' allegation of wrong doing.

(2) Plaintiff Exhibit R-1 consisting of pp 18-19 of 2004 GW Faculty code where item #3 & #4 clearly and unequivocally describe the requirement of termination of service, and that requirement is the approval of Board of Trustee. GWU did not follow this requirement for the case of Plaintiff. This Exhibit also includes pp 26-27 of AAUP Policy Documents and Reports which represents the customary practices in the Academic community. This policy (on page-27) mandates that The Governing Board (i.e. the Board of Trustee in GWU's case) makes the final decision. Plaintiff feels inclusion of this exhibit will be useful for the Court in avoiding confusion created by Defendants' Counsel.

RECEIVED
MAR 24 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Also Defendants argued "An Injunction is not in the Public Interest" without being specific as to how it harms the Public Interest. Plaintiff thinks that keeping law and order (in this case GW's violation of faculty code for retaliation against Whistle Blowing), deterring fraudulent actions (refer to GW's fraudulent actions in Docket # 25, 03/18/2008) and maintaining justice always serve Public Interests.

Respectfully submitted,

*Debabrata Saha*

Debabrata Saha
9409 Fairpine Lane
Great Falls, VA-22066
Ph : (703) 757-5418
March 24, 2008

# United States District Court
# For The District of Columbia

---

**Debabrata Saha,**

    **Plaintiff,**

v.

**The George Washington University,**
**Mona E. Zaghloul, Wasyl Wasylkiwskyj,**
**Edward Della Torre, Joan Schaffner, and**
**Stephen Joel Trachtenberg**

    **Defendants.**

**Civil Action No. 1:08-cv-00087-RCL**

---

## Declaration of Debabrata Saha

1. My Name is Debabrata Saha, and my address is 9409 Fairpine Lane, Great Falls, VA-22066.

2. I am competent to execute this declaration, which I do upon personal knowledge.

3. I am the Plaintiff in the Case : **Civil Action No. 1:08-cv-00087-RCL**

4. Based on my knowledge I do furnish the following :

I firmly and unequivocally deny the allegation of attempted fraud brought by Defendants' Counsel in connection with the Plaintiff Exhibit L that I submitted in connection with my motion dated 02/27/2008. I have attached a copy of "Document 9-5 Filed 02/20/2008 Page 2 of 5" that I received from the Court through Pacer Service and a copy of the first page of Exhibit L. The only difference between the two lies in the right hand corner of my exhibit where I typed "Plaintiff Exhibit L 5pages". I do not see any scope of possible attempted fraud in my typing those words at the right hand corner. Again, I deny attempt of any wrong doing whatsoever on my part.

Though the letter looks much unprofessional, yet the Declaration attached to it confirmed the writer of the letter. If the letter were written professionally, there was no need for the Declaration. Besides, it is not the unprofessional style of the letter that raises the question; it is the fact John Williams has no authority to write that letter. The faculty code mandates that Termination of service requires approval of Board of Trustee. Without that approval, termination of service was never made effective. Plaintiff Exhibit H (Docket 1) points out Plaintiff's faculty status in Fall 2007, and teaching assignments

3

in Fall 2007 and Spring 2008. This reconfirms that neither Tenure was revoked nor Service was terminated. It is quite strange that for **almost one year GWU kept quiet about letter of termination** till Feb. 20, this year when Defendants submitted this unprofessional letter. If the letter were written professionally, then the purpose of attached Declaration seems to be quite **STRANGE !**

I do hereby state to my knowledge, information and belief that the above mentioned statements are true and correct.

*Debabrata Saha* (signature)

Debabrata Saha
Date : March 24, 2008



**THE GEORGE WASHINGTON UNIVERSITY**
WASHINGTON DC

Via Courier and First Class Mail

March 1, 2007

Professor Debabrata Saha
9409 Fair Pine Lane
Great Falls, VA 22066

Dear Professor Saha:

I have been informed by President Stephen Joel Trachtenberg that Executive Vice President Donald Lehman recused himself from determining, under Section 7 of the Grievance Procedures, whether there are compelling reasons not to implement the Dispute Resolution Committee's decision to terminate your tenure for adequate cause. He has further informed me that Dean Frederick Lawrence, to whom that role was delegated, found no compelling reasons (as per the enclosed memorandum). Therefore, the decision will be implemented.

Your tenure, and your University faculty appointment, is terminated effective March 1, 2007.

**Plaintiff Exhibit L**
5 pages



**THE GEORGE WASHINGTON UNIVERSITY**
WASHINGTON DC

Via Courier and First Class Mail

March 1, 2007

Professor Debabrata Saha
[address illegible]
Great Falls, VA [illegible]

Dear Professor Saha:

I have been informed by President Stephen Joel Trachtenberg that Executive Vice President Donald Lehman recused himself from determining, under Section 7 of the Grievance Procedures, whether there are compelling reasons not to implement the Dispute Resolution Committee's decision to terminate your tenure for adequate cause. He has further informed me that Dean Frederick Lawrence, to whom that role was delegated, found no compelling reasons (as per the enclosed memorandum). Therefore, the decision will be implemented.

Your tenure, and your University faculty appointment, is terminated effective March 1, 2007.

## Plaintiff Exhibit R-1

1. GW Faculty Code 2004 : cover page & pp 18-19
2. AAUP Policy Documents & Reports, Tength Edition : cover page & p-1, pp 26-28

The George Washington University

# Faculty Code



THE GEORGE WASHINGTON UNIVERSITY
——— WASHINGTON DC ———

## 2004

# Procedures for the Implementation of the Faculty Code

### A. Governance of Departments and Schools*

The regular, active-status faculty and tenured limited service faculty of each department, school, or comparable educational division shall establish written procedures for the governance of that unit.

### B. Faculty Participation in Action Concerning Faculty Membership

1. The regular, active-status faculty of each school or comparable educational division shall establish procedures enabling an elected standing committee or committee of the whole to submit its recommendations on the allocation of regular-service, tenure-accruing appointments within that unit.

2. The regular, active-status faculty of the rank of assistant professor or higher of a department or of a nondepartmentalized school or comparable educational division shall, subject to such limitations or guidelines as may be established by the faculties of the respective schools, establish procedures enabling an elected standing committee or a committee of the whole to submit its recommendations for appointments. Recommendations for actions other than appointments concerning instructors, assistant professors, or associate professors shall be determined by the tenured members of the faculty of higher rank or of equal and higher rank, as the faculty may have determined by previously established procedures. Recommendations for actions other than appointments concerning professors shall be determined by tenured members of the rank of professor. In the College of Professional Studies, the Dean's Council shall take the place of the elected standing committee or committee of the whole described in this paragraph 2.

3. Appointments and actions affecting renewal of appointments, promotion, tenure designation, and termination of service shall normally follow faculty recommendations. Departures from this standard shall be limited to those cases involving compelling reasons. The appropriate administrative officer shall notify the Executive Committee of the Faculty Senate of any departures from faculty recommendations and the compelling reasons therefor. The faculty or the appropriate unit thereof shall also be notified unless the Board of Trustees determines that such notification would be contrary to the best interest of the individual or individuals concerned.

4. Faculty recommendations concurred in by the appropriate administrative officers shall be transmitted by them to the President, who shall transmit them to the Board of Trustees. Variant or nonconcurring recommendations from an administrative officer, together with supporting reasons, shall be sent by that officer to the Executive Committee of the Faculty Senate through the appropriate superior administrative officers. The Executive Committee may seek information and advice and make recommendations to the faculty or the appropriate unit thereof and to the appropriate administrative officers. If concurrence cannot be obtained after opportunity for reconsideration in the light of the recommendations of the Executive Committee, the recommendations of the appropriate administrative officers, accompanied by the recommendation of the faculty and the report of the Executive Committee, shall be transmitted to the Board of Trustees through the President, except that, at its discretion, the originating faculty unit may instead elect to leave the decision to the President.

---

* In the governance of the Medical Center, all faculty eligible for membership in the Medical Center Faculty Assembly shall be eligible to participate whenever the term "regular" faculty appears in this document.



AMERICAN ASSOCIATION
OF
UNIVERSITY PROFESSORS

# Policy Documents & Reports

TENTH
EDITION

Published by the American Association of University Professors
Washington, D.C.
Distributed by the Johns Hopkins University Press
Baltimore

# ACADEMIC FREEDOM, TENURE, AND DUE PROCESS

From its inception in 1915, the main work of the Association has been in the area of academic freedom and tenure. Policy in this vital area has evolved gradually but continuously since that time. In the year of its founding the Association formulated a "Declaration of Principles," a statement on academic freedom and tenure and professional responsibility, which concluded with a section enumerating desirable procedures. This statement (to be found in Appendix I in this volume) was put to immediate use by the organization's standing Committee A on Academic Freedom and Tenure in dealing with particular cases. Ten years later, the American Council on Education called a conference of a number of its constituent members, among them the AAUP, for the purpose of formulating a shorter statement that would take into account a decade's experience. The product of this effort became known as the 1925 *Conference Statement on Academic Freedom and Tenure*; it was endorsed by the Association of American Colleges (now the Association of American Colleges and Universities) in 1925 and by this Association in 1926. Beginning in 1934, the two endorsing organizations again joined in a series of conferences. The result was the present policy document, the landmark 1940 *Statement of Principles on Academic Freedom and Tenure*, which in later years has been further endorsed by more than 200 additional learned societies and educational associations, and which in 1970 was supplemented by a series of "Interpretive Comments."

Since 1940, the Association has issued other policy statements and reports that explain and develop aspects of the *Statement of Principles* and that also set forth procedural standards for academic due process in a variety of situations. The most generally used among these statements are the 1958 *Statement on Procedural Standards in Faculty Dismissal Proceedings* (developed jointly with the Association of American Colleges), the *Statement on Procedural Standards in the Renewal or Nonrenewal of Faculty Appointments*, and the *Recommended Institutional Regulations on Academic Freedom and Tenure*.

The Association, also from its inception, has assumed responsibility not only for promulgating principles and standards but also for implementing them in specific situations. Believing that unrectified departures from sound academic standards do injury to the entire academic profession, the Association in addition publishes reports of ad hoc investigating committees on specific cases at colleges and universities that raise issues of academic freedom and tenure. These reports offer helpful guidance for the understanding of later situations confronted by the Association and constitute implementation of Association policy. They also contribute to the ongoing process of education in accepted principles and practice which is the central purpose and the most important activity of the Association.

1

and to respond to the evidence. If the faculty member so requests, the evidence will be reviewed by the Faculty Committee on Academic Freedom and Tenure [or whatever other title it may have] before a final decision is made by the governing board on the recommendation of the administration. The faculty member will be given severance salary not less than as prescribed in Regulation 8.

REVIEW
f. In cases of termination of appointment, the governing board will be available for ultimate review.

5. **Dismissal Procedures**
   a. Adequate cause for a dismissal will be related, directly and substantially, to the fitness of faculty members in their professional capacities as teachers or researchers. Dismissal will not be used to restrain faculty members in their exercise of academic freedom or other rights of American citizens.
   b. Dismissal of a faculty member with continuous tenure, or with a special or probationary appointment before the end of the specified term, will be preceded by: (1) discussions between the faculty member and appropriate administrative officers looking toward a mutual settlement; (2) informal inquiry by the duly elected faculty committee [insert name of committee] which may, if it fails to effect an adjustment, determine whether in its opinion dismissal proceedings should be undertaken, without its opinion being binding upon the president; (3) a statement of charges, framed with reasonable particularity by the president or the president's delegate.
   c. A dismissal, as defined in Regulation 5a, will be preceded by a statement of charges, and the individual concerned will have the right to be heard initially by the elected faculty hearing committee [insert name of committee].[8] Members deeming themselves disqualified for bias or interest will remove themselves from the case, either at the request of a party or on their own initiative. Each party will have a maximum of two challenges without stated cause.[9]
      (1) Pending a final decision by the hearing committee, the faculty member will be suspended, or assigned to other duties in lieu of suspension, only if immediate harm to the faculty member or others is threatened by continuance. Before suspending a faculty member, pending an ultimate determination of the faculty member's status through the institution's hearing procedures, the administration will consult with the Faculty Committee on Academic Freedom and Tenure [or whatever other title it may have] concerning the propriety, the length, and the other conditions of the suspension. A suspension that is intended to be final is a dismissal, and will be treated as such. Salary will continue during the period of the suspension.
      (2) The hearing committee may, with the consent of the parties concerned, hold joint prehearing meetings with the parties in order to (i) simplify the issues, (ii) effect stipulations of facts, (iii) provide for the exchange of documentary or other information, and (iv) achieve such other appropriate prehearing objectives as will make the hearing fair, effective, and expeditious.
      (3) Service of notice of hearing with specific charges in writing will be made at least twenty days prior to the hearing. The faculty member may waive a hearing or may respond to the charges in writing at any time before the hearing. If the faculty member waives a hearing, but denies the charges or asserts that the charges do not support a finding of adequate cause, the hearing tribunal will evaluate all available evidence and rest its recommendation upon the evidence in the record.
      (4) The committee, in consultation with the president and the faculty member, will exercise its judgment as to whether the hearing should be public or private.
      (5) During the proceedings the faculty member will be permitted to have an academic advisor and counsel of the faculty member's choice.

26

(6) At the request of either party or the hearing committee, a representative of a responsible educational association will be permitted to attend the proceedings as an observer.

(7) A verbatim record of the hearing or hearings will be taken and a typewritten copy will be made available to the faculty member without cost, at the faculty member's request.

(8) The burden of proof that adequate cause exists rests with the institution and will be satisfied only by clear and convincing evidence in the record considered as a whole.

(9) The hearing committee will grant adjournments to enable either party to investigate evidence as to which a valid claim of surprise is made.

(10) The faculty member will be afforded an opportunity to obtain necessary witnesses and documentary or other evidence. The administration will cooperate with the hearing committee in securing witnesses and making available documentary and other evidence.

(11) The faculty member and the administration will have the right to confront and cross-examine all witnesses. Where the witnesses cannot or will not appear, but the committee determines that the interests of justice require admission of their statements, the committee will identify the witnesses, disclose their statements, and, if possible, provide for interrogatories.

(12) In the hearing of charges of incompetence, the testimony will include that of qualified faculty members from this or other institutions of higher education.

(13) The hearing committee will not be bound by strict rules of legal evidence, and may admit any evidence which is of probative value in determining the issues involved. Every possible effort will be made to obtain the most reliable evidence available.

(14) The findings of fact and the decision will be based solely on the hearing record.

(15) Except for such simple announcements as may be required, covering the time of the hearing and similar matters, public statements and publicity about the case by either the faculty member or administrative officers will be avoided so far as possible until the proceedings have been completed, including consideration by the governing board of the institution. The president and the faculty member will be notified of the decision in writing and will be given a copy of the record of the hearing.

(16) If the hearing committee concludes that adequate cause for dismissal has not been established by the evidence in the record, it will so report to the president. If the president rejects the report, the president will state the reasons for doing so, in writing, to the hearing committee and to the faculty member, and provide an opportunity for response before transmitting the case to the governing board. If the hearing committee concludes that adequate cause for a dismissal has been established, but that an academic penalty less than dismissal would be more appropriate, it will so recommend, with supporting reasons.

### 6. Action by the Governing Board

If dismissal or other severe sanction is recommended, the president will, on request of the faculty member, transmit to the governing board the record of the case. The governing board's review will be based on the record of the committee hearing, and it will provide opportunity for argument, oral or written or both, by the principals at the hearings or by their representatives. The decision of the hearing committee will either be sustained or the proceeding returned to the committee with specific objections. The committee will then reconsider, taking into account the stated objections and receiving new evidence if necessary. The governing board will make a final decision only after study of the committee's reconsideration.

7. **Procedures for Imposition of Sanctions Other Than Dismissal**
   a. If the administration believes that the conduct of a faculty member, although not constituting adequate cause for dismissal, is sufficiently grave to justify imposition of a severe sanction, such as suspension from service for a stated period, the administration may institute a proceeding to impose such a severe sanction; the procedures outlined in Regulation 5 will govern such a proceeding.
   b. If the administration believes that the conduct of a faculty member justifies imposition of a minor sanction, such as a reprimand, it will notify the faculty member of the basis of the proposed sanction and provide the faculty member with an opportunity to persuade the administration that the proposed sanction should not be imposed. A faculty member who believes that a major sanction has been incorrectly imposed under this paragraph, or that a minor sanction has been unjustly imposed, may, pursuant to Regulation 15, petition the faculty grievance committee for such action as may be appropriate.

8. **Terminal Salary or Notice**
If the appointment is terminated, the faculty member will receive salary or notice in accordance with the following schedule: at least three months, if the final decision is reached by March 1 (or three months prior to the expiration) of the first year of probationary service; at least six months, if the decision is reached by December 15 of the second year (or after nine months but prior to eighteen months) of probationary service; at least one year, if the decision is reached after eighteen months of probationary service or if the faculty member has tenure. This provision for terminal notice or salary need not apply in the event that there has been a finding that the conduct which justified dismissal involved moral turpitude. On the recommendation of the faculty hearing committee or the president, the governing board, in determining what, if any, payments will be made beyond the effective date of dismissal, may take into account the length and quality of service of the faculty member.

9. **Academic Freedom and Protection against Discrimination**
   a. All members of the faculty, whether tenured or not, are entitled to academic freedom as set forth in the 1940 *Statement of Principles on Academic Freedom and Tenure*, formulated by the Association of American Colleges and the American Association of University Professors.
   b. All members of the faculty, whether tenured or not, are entitled to protection against illegal or unconstitutional discrimination by the institution, or discrimination on a basis not demonstrably related to the faculty member's professional performance, including but not limited to race, sex, religion, national origin, age, disability, marital status, or sexual orientation.

10. **Complaints of Violation of Academic Freedom or of Discrimination in Nonreappointment**
If a faculty member on probationary or other nontenured appointment alleges that a decision against reappointment was based significantly on considerations that violate (a) academic freedom or (b) governing policies on making appointments without prejudice with respect to race, sex, religion, national origin, age, disability, marital status, or sexual orientation, the allegation will be given preliminary consideration by the [insert name of committee], which will seek to settle the matter by informal methods. The allegation will be accompanied by a statement that the faculty member agrees to the presentation, for the consideration of the faculty committee, of such reasons and evidence as the institution may allege in support of its decision. If the difficulty is unresolved at this stage, and if the committee so recommends, the matter will be heard in the manner set forth in Regulations 5 and 6, except that the faculty member making the complaint is responsible for stating the grounds upon which the allegations are based, and the burden of proof will rest upon the faculty member. If the faculty member succeeds in establishing a prima facie case, it is incumbent upon those who made the decision against reappointment to come forward with evidence in support of their decision. Statistical evidence of improper discrimination may be used in establishing a prima facie case.

# United States District Court
# For The District of Columbia

---

Debabrata Saha,

    Plaintiff,

v.

The George Washington University,
Mona E. Zaghloul, Wasyl Wasylkiwskyj,
Edward Della Torre, Joan Schaffner, and
Stephen Joel Trachtenberg

    Defendants.

Civil Action No. 1:08-cv-00087-RCL

---

## Certificate of Service

I hereby certify that a copy of this whole packet, dated March 24, 2008 is sent to the Counsel of six Defendants by first class mail to the following address.

    Patton Boggs LLP
    2550 M Street, N.W.
    Washington, D.C. 20037-1350


Sincerely,

*[signature: Debabrata Saha]*

Debabrata Saha
March 24, 2008