UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Professor DEBABRATA SAHA, Ph.D., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GEORGE WASHINGTON UNIVERSITY, et al.,. ) <br> ) <br> Defendants. ) <br> ) | C.A. NO. 1:08-087 RCL |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

In their Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Initial Brief"), Defendants carefully weeded through Plaintiff Debabrata Saha's ("Saha") 40-page complaint to distill it down to 28 semi-discernible allegations of breach of contract. In that Initial Brief, Defendants methodically demonstrated how, as to those 28 alleged breaches, Saha has failed to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007); Initial Brief at 7.

Saha's Opposition cures none of those failures. It does not supply the missing elements of his various claims, revive those claims that are time-barred, identify sections of the Faculty Code that the University supposedly violated or identify any facts that would establish liability by any of the five individual defendants. Instead, the Opposition combines some tired assertions (the University never actually revoked his tenure and terminated his employment) with some new, kitchen-sink allegations (cursorily invoking the Americans With Disabilities Act and the DC Human Rights Act, while arguing that the Faculty Code does not require a tenured professor to publish). What Saha still has not shown is that the University breached some contractual obligation to him when it implemented the unanimous recommendation of the Faculty Hearing Committee (unanimously

affirmed by the Faculty Dispute Resolution Committee) to revoke his tenure and terminate his employment.

As set forth below, his complaint should be dismissed.

I. SAHA'S ALLEGED BREACHES ARE TIME-BARRED, DUPLICATIVE OF HIS UNSUCCESSFUL FIRST LAWSUIT OR FAIL TO STATE A CLAIM

A. Saha's Alleged Breaches Prior To January 2005 Are Barred By The Three-Year Statute Of Limitations (Initial Brief at 8-9).

Saha's alleged breach Nos. 8-11, 24 and 28 all allege conduct that occurred more than three years prior to his January 16, 2008 filing of this lawsuit, and thus are time-barred. Saha responds by arguing that the University "wants to apply D.C. statute of limitations to exclude events and breach of contract in Saha's External D.C. court legal proceedings, while, upon acknowledging that no statute of limitations apply to Internal Proceedings governed by GWU faculty code." Opp. at Affidavit B-1, pp. 16-17. Saha has correctly stated the University's position, and the University's position correctly states the law. See Saha v. Lehman, et al., No. 06-01493 (RCL), 2008 U.S. Dist. LEXIS 18606 (D.D.C. Mar, 12, 2008)(Saha's "argument that the District of Columbia's three-year statute of limitations on breach of contract claims applies to grievances arising under the University's Faculty Handbook. . . . is entirely without merit").

Saha next argues that "events and evidence which occurred before Jan. 16, 2005 would be proper and relevant to establish the motives of Defendants" because they may be "background evidence as proof of unlawful intent and defendants' long term behavior tendencies." Opp. at Saha Aff. B-1 at p. 18. Leaving aside what this Court should deem to be relevant evidence – this is not a motion in limine – any alleged breach that occurred more than three years before the filing of this lawsuit is time-barred and should be dismissed. The cases cited by Saha say nothing different.[1]

---

[1] McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973) and Andrews v. City of Philadelphia, 895 F.2d 1469 (3rd Cir. 1990). These are discrimination cases in which intent is an element. Neither involves an alleged breach of contract. Neither involves time-barred allegations, much less treating time-barred allegations as timely.

2

Accordingly, Saha's time-barred claims should be dismissed.

B.  **Saha's Alleged Breaches Pertaining To His September 1 and 2, 2005 Impermissible Campus Appearances Duplicate Allegations On Which Defendants Were Granted Summary Judgment In His First Lawsuit (Initial Brief at 9-10)**

Saha's alleged breach Nos. 14-16 and 27 all pertain to the University's requests that he leave a classroom and then his office on September 1 and 2, 2005 because he had been suspended. Initial Brief at 9-10. Those same allegations appear in Saha v. Lehman, in which this Court recently granted Defendants' motion for summary judgment, Saha, 2008 U.S. Dist. LEXIS 18606 at *9-12, making dismissal of those allegations appropriate in this case.

C.  **Saha's Various Alleged Breaches Continue To Fail To State Claims (Initial Brief at 10-11)**

Saha reiterates that he was "ostracized" (Opp. at 10, 35) and that he feels it was unnecessary for his colleagues to install panic buttons in the office area of the Department (Opp. at 10, 37), but still cannot point to any contract that was violated by these alleged breaches. Similarly, Saha's prolonged rants about the University's supposed mistreatment of him (Opp. at 38) still do not identify any breach of any particular provision of the Faculty Code or any other source of contractual obligation by the University.

On page 16 of his Opposition, Saha lists eight alleged "Violations by Defendants." None states a claim. Item Nos. 1 and 2 refer to the Faculty Code and Handbook, but fail to specify any particular provisions that were allegedly violated. Item No. 3 references the American Association of University Professors (AAUP) Guidelines, but the Guidelines are not incorporated in the Faculty Code and Saha still does not specify what Guideline supposedly was violated.[2] Initial Brief at 12.

---

[2] Specifically, Saha asserts that "Defendants violated and compromised the essence of the ... AAUP Guidelines (in failing to follow customary practices of academic community mandated by GWU Faculty Code)." Opp. at 16. But Saha does not allege that the University's Faculty Code and Handbook incorporate or refer to the AAUP guidelines, and they do not. Defendants' Opposition to "Plaintiff's Request for Reconsideration of Judge Lamberth's March 12, 2008 Memorandum and Order;" at Ex. A and Complaint at Ex. C. Furthermore, the cases cited by Saha offer no support for his proposition. Two of the cases make no mention of the AAUP guidelines. Bason v. American University, 414 A.2d

3

Item No. 4 simply says "Violation of 42 U.S.C. -1983," with no allegation, much less facts in support, of the elements of a §1983 claim. Saha, 2008 U.S. Dist. LEXIS 18606 at *9 (denying Saha's §1983 claim because the Court found Saha's claims of false imprisonment and invasion of privacy/false light to be "wholly without merit."). In Item No. 5, Saha references the D.C. Human Rights Act of 1977, but does not allege any particulars of the supposed discrimination, such as his membership in any protected class. Mason v. DaVita, Inc., No. 06cv1319, 2008 U.S. Dist. LEXIS 26325, 21-22 (D.D.C. Mar. 31, 2008) (to establish prima facie case under DC Human Rights Act, plaintiff "must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination"). In Item No. 6, Saha invokes the Americans with Disabilities Act, but he has never filed a charge with the EEOC or local agency that is the predicate to such a claim in federal court. Whatever item No. 7 – "Violation of local and federal rules on 'fraud as means for plotting a termination of service'" – might mean, it does not state a claim. Similarly, Item No. 8, regarding the "Denial of Employee Benefits," is simply a statement that the University stopped paying him and affording him employee benefits when his employment terminated on March 1, 2007.

Accordingly, each of these claims should be dismissed.

### D. Saha's Alleged Breaches That Pertain To Revocation Of Tenure Or Termination Of Employment Also Fail To State A Claim (Initial Brief at 11-15)

In their Initial Brief at 11-15, Defendants disposed of all of Saha's alleged breaches flowing from the University's conduct before, during and after his revocation hearing. Saha still has failed to identify any particular provision of the Faculty Code that the University supposedly violated at any

---

522 (D.C. 1980) and Pride v. Howard University, 384 A.2d 31 (D.C. 1978). In the third case, the parties expressly agreed that the AAUP guidelines applied. Browzin v. Catholic University, 527 F.2d 843 (D.C. Cir. 1975). In the fourth case, the university specifically incorporated the AAUP guidelines in its handbook. Greene v. Howard University, 412 F.2d 1128 (D.C. Cir. 1969).

4

stage of the process.³ Instead, Saha attaches voluminous documents, most of which are his own narratives, that simply recycle his dismissable allegations.

For example: Saha claims that his tenure revocation hearing was "initiated through a fraudulent process" (Opp. at 8, 11-12, 19, 28, 31) because he allegedly was not provided notice of the May 2, 2005 meeting of the Personnel Committee of his department, when his tenured colleagues found unanimously that Saha "had engaged in persistent neglect of his professional responsibilities." Hearing Committee Decision, Initial Brief at Ex. 1 at pp. 1, 5, 13. Saha does not identify any provision of the Faculty Code (or any other binding document) that requires or contemplates a meeting of the Personnel Committee as part of the tenure revocation process, and there is no such provision. Indeed, the tenure revocation process was not "initiated" through that Personnel Committee meeting. It was initiated, as provided by Section F(1)(a) of the Procedures for the Implementation of the Faculty Code ("Procedures"), by the filing of a complaint signed by Executive Vice President Lehman and SEAS Dean Tong. Defendants' Opposition to "Plaintiff's Request for Reconsideration of Judge Lamberth's March 12, 2008 Memorandum and Order" (hereafter, "Request for Reconsideration") at Ex. A at 31 (Faculty Code).

Saha made this same "I-didn't-get-the-May-meeting-notice" argument to the Hearing Committee. The Hearing Committee properly rejected it, explaining that is "clear from the [Faculty] Code that the University may file a complaint for revocation [of tenure] <u>without</u> the establishment of a department subcommittee to review the faculty's file or a vote by the department that the conduct establishes grounds for tenure revocation." Initial Brief at Ex. 1 at p. 11 (emphasis added). Furthermore, the Hearing Committee explained that "[t]he [Faculty] Code contemplates that the

---

³ In his Opposition at 4, Saha references two affidavits he previously submitted with his Request for Reconsideration of Judge Lamberth's March 12, 2008 Memorandum Order, in which he cites Sections B(3) and (4) of the Faculty Code in support of his argument that the University never actually revoked his tenure or terminated his employment. Defendants address that argument in their Initial Brief at 5-6 and 11 and in this Reply at 6-7.

5

proceedings of THIS Panel are to be conducted pursuant to the principles of due process [and that] Professor Saha has been given adequate notice and an opportunity to be heard during these proceedings." Id. at p. 11 (emphasis in original). Finally, the Hearing Committee expressly stated that it "gave no deference to... the vote of the faculty at the May 2005 meeting." Id. at p. 11.

Saha continues to argue that his tenure was never revoked because University President Trachtenberg did not transmit the Hearing Committee's recommendation to the Board of Trustees for approval.[4] Opp. at 5. But nothing in the Faculty Code required the Board of Trustees' approval of the revocation of Saha's tenure. Tenure revocations are governed by Article F of the Procedures, which incorporates Article E. Defendants' Opposition to Request for Reconsideration at Ex. A at 31-33. Neither Article F nor Article E refers to, much less requires, transmittal of a tenure revocation to the Board of Trustees where, as in the case of Saha, no compelling reasons were found not to implement the decision of the Dispute Resolution Committee (which affirmed the recommendation of the Hearing Committee). Initial Brief at 6; Initial Brief at Exs. 2 and 3 (explaining that Law School Dean Frederick Lawrence found "no compelling reasons" not to implement the decision of the Dispute Resolution Committee, after being designated to substitute for Executive Vice President Lehman following Lehman's recusal). To the contrary, Article E(7) states that the decision of the Dispute Resolution Committee is transmitted only to "the parties, to the Chair of the Executive Committee of the Faculty Senate, and to the [Executive] Vice President of the Academic Affairs." Defendants' Opposition Request for Reconsideration at Ex. A at 31. If the Executive Vice President for Academic Affairs (or, as in this case, an authorized substitute) determines there are no compelling reasons not to implement the decision, the decision is "deemed

---

[4] Saha repeats his claim that the March 1, 2007 letter from University Provost Dr. John F. Williams, Jr. notifying Saha of the revocation of his tenure and the termination of his employment was unsigned and did not designate the office it originated from. Opp. at 5. This claim has been addressed in Defendants' Opposition to Plaintiff's Fourth Motion for Preliminary Injunction, at p. 2-3, and Defendants' Opposition to "Plaintiff's Request for Reconsideration of Judge Lamberth's March 12, 2008 Memorandum and Order" at Ex. A at 1.

6

final" and "shall be implemented." Neither transmittal to nor approval of the Board of Trustees is required in these circumstances.

Saha ignores Articles E and F of the Procedures and mistakenly relies on Sections B(3) and (4). Opp. at 4, citing Saha Affidavit Nos. 1 and 2, attached to Request for Reconsideration. Those sections pertain generally to University Administration deference to Faculty recommendations involving matters of "[a]ppointments and actions affecting renewal of appointments, promotion, tenure designation, and termination of service... ." Defendants' Opposition to Request for Reconsideration at Ex. A at 19. Specifically, they describe the role of the Board of Trustees and the President in deciding matters where the University Administration does not concur in a recommendation of the Faculty. In context, "termination of service" refers to termination of the service of non-tenured faculty; the termination of tenured faculty is governed specifically by Article F, as its title makes clear ("Procedures for the Dismissal of a Faculty Member for Adequate Cause"). Id. at 31.

Even if – contrary to the language of Section F and overall context – Articles B(3) and (4) do apply to a tenure revocation, nothing in them suggests, much less requires, that a "faculty recommendation [to terminate a tenured faculty member that is] concurred in by the appropriate administrative officers" must be made or approved by the Board of Trustees as Saha apparently contends. Id. at 19. Article B(4) expressly provides that a decision that is "concurred in by the appropriate administrative officers" is simply "transmitted" to the Board. Id. at 19. What Saha overlooks in relying on this subsection is that a final "decision" must be made by either the Board or the President **only where there is disagreement between the Faculty and the Administration** (a "[v]ariant or nonconcurring recommendation"). In this respect, Articles B(4) and E(7) are consistent: the Board (or the President) decide on termination of faculty only when the Faculty and

7

the Administration do not agree. In this case, there is no evidence that the Faculty and the Administration did not agree that Saha's tenure should be revoked.

Because Saha has failed to identify any applicable provision of the Faculty Code that the University violated before, during or after the hearing, dismissal is appropriate.

### E. Saha Admits The Hearing Committee's Findings That He Persistently Neglected His Professional Responsibilities By Attempting To Justify His Acts Of Neglect

The Hearing Committee's conclusion that Saha persistently neglected his professional responsibilities was based on its factual findings that he provided no service to the University, did not participate in academic life, did not attend department meetings, did not submit annual reports, did not submit student evaluations, avoided contact with his colleagues, and did not publish a single written work from 2000-2005. Id. at pp. 8-11, 13. Saha does not dispute his derelictions in an attempt to fashion a claim; instead, he attempts to justify them. Opp. at 19-23 (Document 29-2). Why did he not provide service to the university or participate in academic life? Because "[t]he life of a whistle blower in our society is not a very pleasant one." Opp. at 20 (Document 29-2). Why did he not attend department meetings from at least 2000-2005? Initial Brief at Ex. 1 at p. 8. Because of an "understanding" that he had based upon "his discussions with President Trachtenberg" on May 12, 1997. Opp. at 20-21 (Document 29-2). Why did he not submit annual reports? Because the University failed to prove that one-time Department Chair Professor Vojcic requested such reports or "ever reminded Prof. Saha about the annual reports." Opp. at 22 (Document 29-2). Why did he not submit student evaluations? Same response. Opp. at 22 (Document 29-2). The purported justifications go on. Each of Saha's failures is a violation of a faculty member's responsibilities under Faculty Code Sections III(C) and (D). Each of Saha's

purported justifications is an admission of the facts found by the Hearing Committee that resulted in its recommendation to revoke Saha's tenure, and is fatal to his attempt to state a claim.

## II. SAHA HAS FAILED TO STATE A CLAIM AGAINST ANY INDIVIDUAL DEFENDANT (Initial Brief at 15)

Saha still has not alleged that any of the individual defendants had any contractual relationship with him. Saha's thesis, unsupported by legal authority, is that "where individual faculty member is not holding a position appointed by the administration, or not appointed to act as a liaison between administration and general faculty, his or her actions and voting privilege should be considered as that of individual capacity." Opp. at 25. Whatever this statement means, it does not state a basis for any individual defendant's liability to Saha, making dismissal of those claims appropriate.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their Memorandum of Points and Authorities In Support of Defendants' Motion To Dismiss, Defendants The George Washington University, Mona E. Zaghloul, Wasyl Wasylkiwskyj, Edward Della Torre, Joan Schaffner and Stephen Joel Trachtenberg request that this Court dismiss Plaintiff Debabrata Saha's complaint, with prejudice.

_____
Douglas B. Mishkin, DC Bar # 338590
Pamela S. Richardson, DC Bar # 500564
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Counsel for Defendants

Dated: April 18, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2008 a true and correct copy of the foregoing Defendants' Reply in Support of Their Motion to Dismiss was sent by regular mail, postage prepaid to the following:

>Debabrata Saha
>9409 Fairpine Lane
>Great Falls, VA 22066
>
>Plaintiff appearing *pro se*

_____
Douglas B. Mishkin