UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEBABRATA SAHA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-087 (RCL) |
| GEORGE WASHINGTON UNIVERSITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

Presently before the Court is defendant's Motion [9] to Dismiss plaintiff's complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's complaint generally fails to identify how any of defendant George Washington University's alleged actions constitute a breach of contract, and it appears to the Court that most of them do not. With regard to the individual University administrators and faculty members named as defendants, plaintiff fails to identify any contractual relationship whatsoever.

However, plaintiff's action survives this Motion to Dismiss because one subcount—subcount 18(c), alleging that the University denied plaintiff access to evidence against him during his tenure revocation hearing—would, if true, likely constitute a breach of contract by the University. All other parts of plaintiff's complaint shall be dismissed.

## I. BACKGROUND

Plaintiff Debabrata Saha was hired by the George Washington University (the

"University") in 1986 as an assistant professor. (Compl. Ex. A.) He was granted tenure effective Fall 1993. (Compl. Ex. F.) In 1996, plaintiff states that he informed University administrators of qualifying exams being improperly administered to graduate students in his department. (Compl. 5–6.) Plaintiff states that he has suffered retaliation from certain University faculty and administrators ever since.

Plaintiff was suspended by the University four times since 1996 (in years 1997, 1999, 2003, and 2005). (Compl. 22.) Before plaintiff's 2005 suspension began, there was a February 2005 meeting of professors from plaintiff's academic department at which plaintiff was not present. This was followed by another faculty meeting in May 2005. Plaintiff claims that the May meeting was the impetus for his 2005 suspension and eventual tenure revocation. (Compl. 27, 35 at No. 17.)

Plaintiff's 2005 suspension began on August 29, 2005. (Compl. 11, 18.) Plaintiff states that the University did not inform him that he had been suspended. *Id*. Plaintiff continued coming to work during the remainder of August. (Compl. 18.) On September 1, while plaintiff was giving a lecture on campus, he was escorted from the campus ("perp walked," in his words) by police officers and informed that, because of his suspension, he was barred from the campus. *Id*. Plaintiff states that he was "perp walked" again on September 2. (Compl. 11.) On September 16, 2005, University Vice President Donald Lehman filed a complaint with the University seeking to revoke plaintiff's tenure, charging plaintiff with "persistent neglect of professional responsibilities" and "gross misconduct that destroys academic usefulness." (Compl. 27; Mot. to Dismiss Ex. 1.) A November 18, 2005 letter from Vice President Lehman confirmed to plaintiff that he was "on paid suspension until further notice." (Compl. Ex. J.)

The tenure revocation proceeding began in December 2005 before a faculty Hearing Committee, as specified by the University Faculty Code's "Procedures for Implementation" ("Faculty Code Procedures"). (Compl.11; Faculty Code Procedures E, F.) Plaintiff states that during the proceedings he was not allowed to introduce evidence of events prior to April 1999, nor was he permitted to access certain pieces of University evidence (specifically a October 30, 1997 letter which he claims Vice President Lehman used in the complaint). (Compl. 29, 35 at No. 18.) On July 24, 2006, the Hearing Committee found that the University had met its burden on the first charge (neglect of professional responsibilities) but not on the second (gross misconduct). (Mot. to Dismiss Ex. 1.) Accordingly, the Committee decided that plaintiff's tenure should be revoked and his employment terminated. *Id*. at 13. Plaintiff appealed the Committee's decision, but the decision was affirmed in December 2006. (Mot. to Dismiss Ex. 2.)

After finding no compelling reason not to implement the decision, University Provost John Williams—filling in for Vice President Lehman, who had recused himself—did so on March 1, 2007. (Faculty Code Procedures E(7).) Plaintiff states that he never received confirmation of the final implementation of the Committee's decision. Defendants submit an affidavit stating that a letter was sent to plaintiff by Provost Williams via regular mail and courier on March 1, 2007, informing plaintiff that he was terminated as of that date. (Mot. to Dismiss Ex. 3.) Plaintiff maintains that, because he did not receive the letter from Provost Williams, his status is still that of suspended without pay. (Opp'n at 1.) The University stopped delivering plaintiff's paychecks and denied him office access beginning on March 1, 2007, and continuing to present.

On October 24, 2006, plaintiff sued the University and two administrators alleging § 1983 violations, false arrest and imprisonment, and invasion of privacy. This Court granted summary judgment for defendants in that lawsuit in March 2008. The current lawsuit, alleging breach of contract, was filed on January 16, 2008.

## II.  ANALYSIS

**A.     Legal Standard**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating the prior standard which required appearance, beyond a doubt, that plaintiff can prove no set of facts in support of his claim that would entitle him to relief). The Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff, and the plaintiff will have the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court is not required to accept plaintiffs' unsupported inferences, nor "legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.

Pleadings filed by pro se parties are not to be read as stringently as those filed by attorneys. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is to be liberally construed . . . .") (internal quotations omitted). However, "'a pro se complaint, like any other, must state a claim upon which relief can be granted by the court.'" *Metropolitan Life*

*Ins. Co. v. Barbour*, 555 F. Supp. 2d 91, 96 (D.D.C. 2008) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir.1994)).  In ruling on this motion to dismiss for failure to state a claim, the Court can consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).

**B.     Relevant Contracts**

Plaintiff's contractual relationship with the University appears to consist of only two documents: the Faculty Code and the Faculty Handbook.  Plaintiff's Complaint rarely, if ever, identifies the specific provisions that defendants allegedly breached in either of these documents.  Because Plaintiff attached the entire Faculty Code to his complaint (Compl. Ex. B), the Court is able to consider it when construing plaintiff's claims as favorably as possible.[1]  (The Faculty Code also includes "Procedures for Implementation of the Faculty Code," referred to herein as "Faculty Code Procedures.")  However, plaintiff only submitted the table of contents and foreword to the Faculty Handbook. (Compl. Ex. C 1–6.)  Because plaintiff has not identified specific breached provisions nor attached any text of the Handbook for the Court to consider, it cannot be said that plaintiff has pled "enough facts to state a claim" that the University breached the Handbook's conditions.  Thus, for purposes of this motion to dismiss, the Court can consider

---

[1] Plaintiff attached the 1996 version of the Faculty Code.  A new version, which was published in 2004, superseded the 1996 version (as defendants noted in filings on a different motion).  Again, though, for purposes this Motion to Dismiss, the Court can only consider the Complaint, documents attached to or incorporated by the Complaint, and matters of which judicial notice can be taken.  Accordingly, the 1996 version of the Code will be the one referenced by the Court.

only the Faculty Code, and not the Faculty Handbook, when attempting to identify possible contractual obligations between plaintiff and defendants.

Plaintiff also attached the AAUP (American Association of University Professors) "Policy Documents and Reports" (Compl. Ex. D) and a portion of Article I of the U.S. Constitution (Compl. Ex. E). However, plaintiff did not identify how either of these two documents created or affected his contractual relationship with any of the defendants. Thus the Court cannot treat either as the source of any contractual obligation.

### C.     Plaintiff's Allegations Against the University Which, Even If True, Do Not State a Claim (Counts 1–18(b) and 19–28)

Almost all of plaintiff's alleged breaches of contract by the University fail to identify how any of the University's alleged actions constitute a breach of contract. Of plaintiff's twenty-eight counts, all but one part of one count suffer from this defect. As such, those counts shall be dismissed.[2]

#### 1.    Allegations of Humiliation, Intimidation, or Inconvenience (Counts 8–12, 14–16, 21, 23–25, and 27)

Thirteen counts allege actions by the University which caused plaintiff humiliation, intimidation, or inconvenience. Counts 8 and 9 allege harassment after plaintiff's whistleblowing. Count 10 alleges that, in retaliation for plaintiff's whistleblowing, he received

---

[2]The Court notes that a few of plaintiff's claims would also be barred by the statute of limitations. *See* D.C. Code § 12-301 (three-year statute of limitations for breach of contract claims). Although plaintiff's complaint makes it difficult to ascertain when exactly some of the claims accrued, Counts 11, 24, and 28 all seem to involve actions that occurred more than three years prior to the initiation of this action.

only negligible pay raises between 1996 and 2007.  Count 11 alleges that the University threatened to revoke plaintiff's tenure.  Count 12 claims plaintiff was ostracized.  Counts 14, 15, and 16 relate to humiliation plaintiff suffered upon being escorted from the University in September 2005, and Count 27 accuses the University of later "covering up" its actions.  Count 21 claims that the University wrongly portrayed plaintiff as a dangerous individual.  Count 23 alleges that the University regularly hindered and inconvenienced plaintiff's teaching.  Count 24 alleges that plaintiff was falsely accused of "scientific misconduct."  Finally, Count 25 alleges that the University withdrew research resources from plaintiff.  Aside from asserting legal conclusions, plaintiff does not identify how any of the foregoing allegations, if true, constitute a breach of the Faculty Code.  It appears to the Court that they do not.

### 2. Allegations of Procedural Irregularities (Counts 3–7, 13, 17–18(b), 20, 26, and 28)

Other counts allege procedural irregularities in several University proceedings against plaintiff.  Plaintiff's characterizations of these irregularities as breaches of contract, however, are unsupported by the Faculty Code, and therefore fail to state claims upon which relief could be granted.

Counts 6 and 7 allege improper evidentiary procedure by the Hearing Committee.  These allegations are repeated in Count 18, subparts (a) and (b). (Count 18, subpart (c), is addressed below at II.D.)  But the Faculty Code Procedures allow the Committee to exclude evidence at its discretion. (Faculty Code Procedures E(3)(c)(3) ("[The Committee] is not required to comply with the rules of evidence applicable in courts of law . . . . [The Committee] may decline to

consider evidence when its probative value is outweighed by considerations of unfair prejudice, confusion of the issues, undue delay, waste of time, or needless presentation of cumulative evidence.").)

Other counts allege irregularities that the Faculty Code simply does not address. Counts 3, 4, and 13 allege that the suspension of plaintiff in Fall 2005 was "fraudulent," "dishonest," and "disingenuous." Count 5 alleges bias in a February 9, 2005 departmental committee meeting which allegedly played a role in the Fall 2005 suspension. Count 17 alleges that the tenure revocation process was actually motivated by the May 2005 department meeting, and thus the Hearing Committee erred by not including that meeting in the Committee's record. Count 20 claims that the University did not follow the American Association of University Professors' guidelines in revoking plaintiff's tenure. Count 26 alleges that Vice President Lehman failed to return an interrogatory prior to the Hearing Committee's meeting. Finally, Count 28 alleges that the University denied relief in plaintiff's internal claims of harassment and discrimination. Even if one assumes that each of the foregoing allegations is true, plaintiff does not identify, and the Court cannot find, how the Faculty Code (or any other contract) is thereby breached. These allegations thus fail to state a claim upon which relief could be granted.

### 3. Alleged Falsified Document (Count 19)

Count 19 alleges that the University "breached its employment contract with [plaintiff] by falsifying a document to enhance its attempt of revocation of [plaintiff's] tenure." Plaintiff does not identify to which document he is referring, why that document is significant, or, most importantly, how the alleged falsification would constitute a breach of the Faculty Code. Nor can

the Court ascertain that information after several readings of the complaint. Thus the Court has no reason to conclude that, were plaintiff's allegation true, it would state a claim for breach of contract.

### 4. Allegations Related to Termination Letter (Counts 1, 2, and 22)

Plaintiff's remaining counts—Counts 1, 2, and 22—stem from plaintiff's claim that he was not notified of the final implementation of the Hearing Committee's decision. Plaintiff states that he never received University Provost John Williams's March 1, 2007 letter informing plaintiff that the decision revoking his tenure and terminating his employment was being implemented. (Opp'n at 5.) Defendants' affidavit to the contrary notwithstanding, for purposes of this motion to dismiss plaintiff's factual allegations must be taken as true.

However, even if plaintiff's allegations are true, the University's actions do not appear to constitute a claim of breach of contract. The Faculty Code states that after the Hearing Committee's decision has been affirmed, it "shall be transmitted to the President and the Board of Trustees for final disposition." (Faculty Code Procedures E(5).) Nowhere does the Code require the University to at that time inform the terminated faculty member of the finality of the Committee's decision. To do so is undoubtedly a good practice, but failure to do so does not invalidate an otherwise legitimate decision.

Other than those reasons already disposed of herein, plaintiff gives no other reasons why the University's revocation of his tenure was not effective. Therefore, each of the three related counts—Count 1 alleging failure to pay plaintiff's salary, Count 2 alleging that plaintiff was locked out of his office, and Count 22 alleging that plaintiff was not allowed to participate as a

normal faculty member—fails to state a claim for breach of contract.

**D.     Plaintiff's One Remaining Subcount Against the University: Count 18(c), Denial of Access to University Evidence**

Count 18, subpart (c), alleges that during the course of the tenure revocation process the University denied plaintiff access to evidence against him. (Compl. 35 at No. 18(c).) Specifically, plaintiff alleges that he was denied access to an October 30, 1997 letter from Vice President Lehman that was used in the complaint against plaintiff. This allegation differs from plaintiff's other twenty-seven allegations in that if it is true, the University's action appears to constitute a breach of the Faculty Code. The Faculty Code states that "[a] party shall be entitled to inspect and copy . . . any relevant documents in the control of the other party and not privileged . . . ." (Faculty Code Procedures E(3)(c)(3).) Here, plaintiff has pled "enough facts to state a claim for relief that is plausible on its face," *Twombly*, 127 S. Ct. at 1974, and thus this allegation survives defendant's motion to dismiss.

**E.     Plaintiffs Allegations Against Individual Defendants Fail to State a Claim**

All of plaintiff's allegations against the individual defendants—Mona E. Zaghloul, Wasyl Wasylkiwskyj, Edward Della Torre, Joan Schaffner, and Stephen Joel Trachtenberg—fail to state a claim because plaintiff has shown no contract between himself and any individual defendant. The only contract in this case is between plaintiff and the University. Plaintiff cannot sue University officials under this contract for actions by the University because an agent generally cannot be held liable for acts committed by a disclosed principal. *See Paul v. Judicial Watch*,

*Inc.*, 2008 U.S. Dist. LEXIS 8266 (D.D.C. 2008) at *5.  Moreover, even if there were a contract between plaintiff and the individual defendants, plaintiff never clearly articulates an allegation against any of them.  Each of plaintiff's allegations states only that "GW [the University] breached its employment contract with [plaintiff] . . . ."  (Compl. 32–36.)  For either of these reasons, all counts against defendants Mona E. Zaghloul, Wasyl Wasylkiwskyj, Edward Della Torre, Joan Schaffner, and Stephen Joel Trachtenberg, whether in their individual or official capacities, fail to state a claim for breach of contract.

### III.  CONCLUSION

Plaintiff has demonstrated no contract between him and any defendant other than the University.  As for most of the alleged actions by the University, most, even if true, would not constitute breaches of contract.  However, because subcount 18(c) does appear to allege a potential breach of contract by the University, plaintiff's action against the University can continue in that limited respect.

A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, September 23, 2008.